188 P.3d 782

**John DOE, Plaintiff–Appellee,**

**v.**

**Jane DOE, Defendant–Appellant.**

**No. 27062.**

Intermediate Court of Appeals of Hawai'i.

June 25, 2008.

As Amended July 16, 2008.

Blake T. Okimoto, Honolulu, and Anne M. Kaya, on the briefs, for Defendant–Appellant.

Charles T. Kleintop and Robert T. Nakatsuji, (Stirling & Kleintop), Honolulu, on the briefs, for Plaintiff–Appellee.

Dorothy Sellers, Solicitor General, and Kimberly Tsumoto Guidry, Deputy Solicitor General, on the briefs, for amicus curiae State of Hawai'i.

WATANABE, PRESIDING Judge, FOLEY and FUJISE, JJ.

Opinion of the Court by FOLEY, J.

This appeal arises out of a divorce proceeding in the Family Court of the First Circuit (family court) between Defendant–Appellant Jane Doe (Defendant or Mother) and Plaintiff–Appellee John Doe (Plaintiff or Father) and custody issues involving Mother and Father's daughter (Daughter). Mother appeals from the following orders[1] entered by the family court:

---

1. The Honorable Gregg H. Young was the presiding judge for the hearing on and/or consideration of the three contested orders.

(1) "Order Following Hearing on Plaintiff's October 1, 2004 Motion for Post–Decree Relief and Defendant's October 29, 2004 Motion to Enforce Family Court Policies and Order Plaintiff to Attend Kids First, Request for Mediation, Request for Voluntary Settlement Master for All Outstanding Issues, and Request for Voluntary [Guardian Ad Litem (VGAL) ] to Preserve [Daughter's] Rights" (Order) filed on November 30, 2004. In its Order, the family court (a) granted Father's October 1, 2004 Motion and Affidavit for Post–Decree Relief (Motion for Post–Decree Relief) and directed that Father's payment of child support for Daughter be continued by the existing direct payment arrangement; (b) directed the Hawai'i Child Support Enforcement Agency (CSEA) to close its case against Father, cease all collection and enforcement efforts against him (including any child support arrearage), and not open any future cases connected with him to institute collection and enforcement efforts without the family court's approval; (c) ordered Mother to direct any future child support modification requests to the family court, not to CSEA; and (d) reserved the issue of an award of attorney's fees and costs to Father. The family court denied all of Mother's requests for relief in her October 29, 2004 "Motion to Enforce Family Court Policies and Order Plaintiff to Attend Kids First, Request for Mediation, Request for Voluntary Settlement Master for All Outstanding Issues, and Request for [VGAL] to Preserve [Daughter's] Rights" (Motion to Enforce).

(2) "Order Awarding Attorney's Fees and Costs to Plaintiff," filed on November 24, 2004 (Order Awarding Fees/Costs), in which the family court ordered Mother to pay to Father $2,500 in fees and costs in connection with the two motions.

(3) "Order Denying Defendant's Motion for Reconsideration and/or New Trial on Order Following Hearing on Plaintiff's October 1, 2004 Motion to [sic] Post–Decree Relief, Etc., Filed December 9, 2004" (Order Denying Motion for Reconsideration) filed on January 4, 2005.

On appeal, Mother argues the following:

(1) In the family court's February 22, 2005 "Findings of Fact and Conclusions of Law" (February 22 FOFs/COLs), Findings of Fact (FOFs) 25, 26, 28, and 34–36 are clearly erroneous and its Conclusions of Law (COLs) 2–4, 6, and 8–9 are wrong because

(a) pursuant to Hawaii Revised Statutes (HRS) Chapters 576D and 576E and Title 45 (Public Welfare), § 301.10 (1992) of the Code of Federal Regulations (C.F.R.), Mother had the right to apply to CSEA for services;

(b) the family court failed to determine in writing or on the record that implementing income withholding would not be in Daughter's best interest, in violation of HRS § 576D–10(d) (2006 Repl.);

(c) the implementation of income withholding would be in Daughter's best interests; and

(d) the portion of the family court's Order that CSEA close its case on Father and that Mother submit any future modification of child support to family court and not to CSEA was not reflected in the Court Minutes of the hearing on the Motion for Post–Decree Relief and, therefore, that portion violated Hawai'i Family Court Rules (HFCR) Rule 58.

(2) The family court erred in not striking Father's November 8, 2004 pleadings as untimely because Father failed to file and serve the pleadings within 48 hours of the November 10, 2004 hearing on the two motions.

(3) COLs 10 and 11 are wrong.

(4) FOFs 34, 35, and 36 are clearly erroneous and COL 12 is wrong because Mother's actions involving CSEA were not frivolous or without merit and her request in the Motion to Enforce that Mother and Father (collectively, the parties) utilize programs established by the family court was not frivolous, and, therefore, the family court should not have awarded attorney's fees and costs against Mother.

(5) The family court erred in denying the Motion to Enforce.

## I.

### A. Underlying Facts of the Case

The relevant, underlying facts in the instant case, as summarized by the family

court in its February 22 FOFs/COLs, are as follows:

3. On July 22, 1996, [the parties] executed an Agreement Incident to Divorce (hereinafter "AITD") which contained, *inter alia,* the parties' agreement on child support and health care for [Daughter].

4. On July 24, 1996, a Divorce Decree incorporating by reference the July 22, 1996 AITD was entered by the Family Court.

5. The AITD and Divorce Decree specifically provided that [Father] was to pay child support to [Mother] in the amount of *$4,000.00* per month.

6. The AITD and Divorce Decree also specifically provided that [Father] was to pay the child support directly to [Mother] on the first day of each month.

7. The AITD and Divorce Decree also specifically provided that the [CSEA] was *not* to be made a party in this case.

. . . .

10. Since the entry of the Divorce Decree on July 24, 1996, the parties have had occasion to litigate various issues in Family Court. However, the amount and manner of payment of child support and medical insurance coverage for [Daughter] have never been issues in any of this litigation.

11. In the March 11, 2003 Stipulated Order Resolving Issues Raised in [Father's] December 24, 2001 Motion for Post–Decree Relief and [Mother's] January 22, 2002 Affidavit of [Mother] in Opposition to [Father's] Motion for Post–Decree Relief, Other Related Issues, and Issues Pending in Other Courts (hereinafter "the March 11, 2003 Stipulated Order"), [Father] specifically agreed *not* to seek a reduction in the amount of his child support obligation even though custody was changed to an *equal* timesharing arrangement for [Daughter] (thereby presumptively warranting a reduction in the amount of child support to be paid to [Mother] ).

12. On September 21, 2004, without any notice, [Father] received a number of documents from the CSEA.

13. In its letter dated September 20, 2004, the CSEA informed [Father] that:

"The [CSEA] has opened a case involving you and your child(ren) for the purpose of collecting support payments. Your case was either referred by the Hawaii Department of Human Services because your children are receiving public assistance or *the parent or custodian of the children has submitted an application for child support enforcement services.*" (Emphasis added.)

14. The CSEA also sent [Father] a document entitled: "Notice of Change in Payment Requirements." That document stated: "The [CSEA] has received an application for child support enforcement for the case indicated above. Because of this, the provision of your support order that allowed for support to be paid directly to the custodial parent is now void."

15. The CSEA then stated that support payments would now have to be made payable to the CSEA and would have to be sent to the CSEA. The CSEA also stated that, effective October 1, 2004, the CSEA would be maintaining records on [Father] regarding support due and support paid.

. . . .

17. The CSEA also sent [Father] a Security Access Code Notice stating that the CSEA had recently opened a child support case for [Father] and his child(ren).

18. Finally, the CSEA sent [Father] a form requesting employment and income information from him.

19. Based on the documents sent by the CSEA and [Mother's] own statements in open court, it is clear that [Mother] submitted an application for services to the CSEA and that as a result of this application, the CSEA declared that the direct payment order was void and "opened a case" on [Father].

20. [Father] has (and has had for years) standing instructions to the Private Banking Department of [Bank] to transfer *$4,000.00* on the first day (or the following business day) of each month from his bank account at [Bank] to [Mother's] bank account at [Bank]. This transfer is done automatically and the debit to his account and the credit to her account are simultaneous. [Father] then receives a written receipt confirming that the transfer was

made. As soon as the transfer is made, [Mother] has the money available for her use for [Daughter].

. . . .

22. [Father] has no child support arrearage and has never been late in his child support payments to [Mother].

. . . .

29. The parties were not required to participate in the Kids First program when this divorce action was initiated on August 2, 1995.

30. After the parties' divorce was concluded, [Father] successfully completed parenting counseling[.]

(Emphasis in original.)

### B. Motion for Post–Decree Relief and Motion to Enforce

In his Motion for Post–Decree Relief, Father maintained that, *inter alia*, Mother had "attempted to unilaterally change the currently existing direct payment order for child support by filing an application for CSEA services, even though the [divorce] decree does not specifically allow for such a change." Father requested "[a]n order requiring [Mother] to withdraw her application for services to the CSEA, continuing the currently existing direct payment order for child support, and directing the CSEA to cease all of its collection and other enforcement efforts against [Father]."

In her October 26, 2004 opposition memorandum to the Motion for Post–Decree Relief, Mother alleged, *inter alia*, that she had agreed in the AITD to prohibit CSEA from becoming a party in the case because she thought that she had waived any child support payments in a September 23, 1991 agreement (the September 23, 1991 agreement) she entered into with Father prior to Daughter's conception.[2]

On October 29, 2004, Mother filed the Motion to Enforce, in which she requested the following:

1. Pursuant to HRS Mandatory [sic] attendance for the Kid's [sic] First Program and Memorandum dated April 19, 19994 [sic] from the Honorable Judge George M. Masuoka. See Exhibit "1".

2. Request for mediation. Mediation has been found to significantly reduce the need for litigation, and I believe that mediating FC–D No. 95–2875 [this case] will significantly lower the cost for the taxpayer. See Exhibit "2".

3. Request for voluntary settlement master for all outstanding issues.

4. Request for voluntary guardian ad litem to preserve [Daughter's] rights.

On November 8, 2004, Father filed his affidavit in response to the Motion to Enforce.

On that same date, Father also filed a reply memorandum to Mother's opposition memorandum to the Motion for Post–Decree Relief. Among other things, he argued that the September 23, 1991 agreement was irrelevant to the issues in the case and maintained that Mother had not waived her right to child support, as evidenced by the portions of the AITD and divorce decree obligating Father to pay child support. Father asserted that a change in the direct payment arrangement would not be in Daughter's best interest.

On November 9, 2004, Mother filed a supplemental declaration in support of her Motion to Enforce.

On November 10, 2004, the family court held a hearing on the Motion for Post–Decree Relief and Motion to Enforce. With regard to the Motion to Enforce, Mother argued that Father's participation in the Kids First program (Kids First), the parties' participation in mediation, and the court's appointment of a VGAL for Daughter would be in Daughter's best interests. Mother argued that the custody order for Daughter had been modified in June 1999 and that, as

---

**2.** The September 23, 1991 agreement provided that "[i]n the case of a divorce[,] [Mother] will not call upon [Father] for support, maintenance and housing for the child, as she believes that she is fully capable of acting as a single parent in a home separate from [Father's] home." The

agreement also provided that "[Mother] understands that she is waiving rights which she might be legally entitled to but desires that the generality and the specifics of the above be legally enforceable."

of 1996, participation in Kids First was required any time a custody order was modified.

With regard to the Motion for Post–Decree Relief, Mother explained that she filed an application with CSEA requesting a review of the existing child support order because at the time the divorce was finalized, she believed she may have stipulated to an amount of child support that was "inappropriate" according to the federal child support guidelines. Mother argued that she had the right to request such a review.

The family court and Mother discussed the following with regard to Mother's consulting CSEA for assistance in determining the correct child support amount:

[THE COURT:] You're free to make an inquiry as to the amount, you can do that on your own, you can use the guidelines and figure those out. So I'm not stopping you from inquiring as to the correct amount, [Mother]. It's just that the continuing-that the manner of payment remain as stated in the decree, that there be direct payments, and until that $4000 is amended by a Court, it's in effect and really not before me[.]

. . . .

THE COURT: ... I'm saying that you can go ahead and determine whether or not you're paying, quote, the guidelines, you're being paid the guideline support amount, but I'm saying that that payment, whatever you decide-whatever the Court determines other than $4000 would still be direct payments, not through the CSEA.

[Mother]: But CSEA will be able to help me in determining the amount.

THE COURT: If they wish, I don't think they do that. I don't think that's a service they provide. You—everybody does their own figuring, they don't go through the CSEA. In other words, these people that are changing custody to joint custody have to reevaluate the child support guidelines and they bring the calculations to me and I check them over. I don't ask the CSEA to help me figure them out, otherwise they'd be burdened on every single case that we have of determining child support. And uncontested divorces,

I do like 30 a box [sic], and I don't ask the CSEA to help me determine the child support guidelines.

... [Y]ou're free to recalculate the amount and bring it to the Court's attention if it's too little. And if it's too much, you can notify [Father's attorney] and say that [Father] is paying too much, that you'll accept whatever the lessor amount is, and you can put it into a stipulation[.]

[Mother]: I understand, Your Honor, and thank you.

. . . .

THE COURT: Okay. If you read the guidelines at a certain amount over income, it becomes sole [sic] discretionary with the Court.

[Mother]: I understand, Your Honor.

THE COURT: Okay. So that even if you had the guidelines, which go back, I think, to 1986 or '82, all of the guidelines would probably not apply to ... your case and the federal statute because [Father's income is] in excess of the amount on the table, the maximum amount on the table.

[Mother]: I understand that, but I don't think that negates the mandatory requirement for each party to file an income and expense statement so that the Court can determine the appropriate guidelines.

THE COURT: But again, if everybody knows that the income is higher than the guideline amounts, what would be the purpose of filing financial statements for calculation of child support if the tables are exceeded by both party's [sic] acknowledgment of the party's income?

[Mother]: I understand, Your Honor. I just—the way I understood what was appropriate is that an exception would have to be asked for and granted, that the guidelines would be—

THE COURT: Deviated from—

[Mother]:—deviated from—

THE COURT: But they're not been deviated [sic] because they exceed the guidelines.

. . . .

THE COURT: Why don't you calculate it [the child support amount] and deter-

mine? You can do that on your own, you don't need the Court to determine it.

[Mother]: I don't.

THE COURT: Okay. So—

[Mother]: I went exactly [sic] to the federal government because they have a support—

THE COURT: And what did they say the calculation should be?

[Mother]: We haven't got that far yet, I just opened the case.

THE COURT: Well, go that far.

[Mother]: All right. I will do that with the government.

THE COURT: You can determine what the amount is and then if it exceeds $4000, you can bring that before the Court and seek an increase. If it's below, I don't think you need to come in, you can just stipulate and call up [Father's attorney] and tell him that ... [Father] is paying you too much and that it be reduced. And you folks can do a formal letter or just a letter and enter that into the file so that it's of record that the child support is reduced from $4000[.]

\* \* \*

THE COURT: ... [T]he Court's not ordering CSEA to determine what the child support should be in this case, that's for the Court to determine.

[Mother]: ... So the Court's not ordering me to not contact CSEA for assistance?

THE COURT: In what? Assistance in—because their function is to collect child support, and I've ordered that they not collect the child support, that it be done directly, so I don't know what you would be inquiring of them.

. . . .

THE COURT: ... I'm not preventing you from availing [sic] or using their services, whatever services they offer to the general public[.]

In its Order, the family court found, in relevant part:

2. The existing direct payment of child support arrangement, as established in the July 24, 1996 Divorce Decree in this case, shall continue to be the manner of payment of child support for the parties' minor child, [Daughter], until further order of the Court. The Court finds that there *is* good cause to approve the direct payment of child support arrangement, that the payment of child support through income withholding is *not* in [Daughter's] best interests, and that the direct payment of child support arrangement *is* in [Daughter's] best interests.

3. In light of the above, the CSEA is hereby ordered to and shall close its case on [Father] and cease all collection and enforcement efforts against [him].

4. Any requests by [Mother] in the future to modify existing child support orders in this case shall be submitted to the Family Court and not to the CSEA. [Mother] is free to seek whatever information or advice she wants from the CSEA, but the CSEA shall not open a case on [Father] and institute collection and enforcement efforts against him without the Court's approval.

. . . .

6. [Mother's] [Motion to Enforce] shall be and is hereby denied in all respects.

(Emphasis in original.)

On December 8, 2004, CSEA filed a motion for reconsideration of the Order, asking the family court to vacate portions of the Order prohibiting CSEA from providing child support enforcement services to Mother on the grounds that federal and state law permitted any parent to apply for and receive such services.

On December 9, 2004, Mother filed a motion for reconsideration of the Order.

Father filed memoranda in opposition to CSEA's and Mother's respective motions for reconsideration, and Mother and CSEA filed reply memoranda. Father filed written objections to the reply memoranda, and Mother filed an answer to Father's objection to her reply memorandum.

On January 4, 2005, the family court filed orders denying CSEA and Mother's motions for reconsideration.

Mother timely appealed and requested the family court to enter FOFs and COLs. The family court's February 22 FOFs/COLs provided, in relevant part:

II. [FOFs]

* * *

21.... [I]f payment [of child support] is made through the CSEA, there will be delays before the money is available for [Daughter]. This simply can't be helped because the money has to be sent to the CSEA, processed by the CSEA, and then sent on to [Mother].

. . . .

23. The currently existing direct payment order has worked well for over eight (8) years and ensures that the funds for [Daughter's] benefit are available to [Mother] on the first day (or the following business day) of each month.

. . . .

25. The Court finds that there *is* good cause to approve the direct payment of child support arrangement, that the payment of child support through income withholding is *not* in [Daughter's] best interests, and that the direct payment of child support arrangement *is* in [Daughter's] best interests.

26. The Court also finds that under the direct payment arrangement now in place, the child support payments are available for [Daughter's] benefit much faster than they would be through income withholding and that the direct payment arrangement eliminates the risk of delays caused by bureaucratic mistakes on the part of the CSEA.

. . . .

28. [Mother] is free to recalculate the child support amount any time she wants and bring the child support amount issue back to Family Court if she believes a change in the child support amount is warranted. Although determining the child support amount could be a complicated issue due to the fact that [Father's] income would likely exceed the *$10,000.00* per month limit of the child support guidelines worksheet, [Mother] is free to do this if she wants.

. . . .

30. After the parties' divorce was concluded, [Father] successfully completed parenting counseling.... He therefore gained the equivalent knowledge presented by the Kids First program (or more) and doesn't have to participate in that program now, more than eight (8) years after the divorce was concluded.

31. Based on the history of this case, mediation is not likely to be successful and therefore the parties shall not be required to attempt mediation.

32. Based on the history of this case, the Volunteer Settlement Master program is also not likely to be successful and therefore the parties shall not be required to participate in that program.

33. The [VGAL] program applies only to Child Protective Services ("CPS") cases. Accordingly, the appointment of a VGAL is not appropriate or warranted for the present case.

34. The Court finds that [Mother] initiated her application with the CSEA and filed her October 29, 2004 Motion to Enforce for the sole and improper purpose of harassing [Father].

35. The Court finds that these actions by [Mother] were frivolous as they were manifestly and palpably without merit so as to indicate bad faith on the part of [Mother].

36. The Court also finds that [Father] incurred significant attorney's fees and costs in responding to [Mother's] actions, first in filing his October 1, 2004 Motion for Post–Decree Relief which was essentially a motion to enforce the existing court order providing for the direct payment of child support and second in filing his November 8, 2004 Affidavit in Response to [Mother's] October 29, 2004 Motion to Enforce which, as stated above, was a frivolous Motion.

37. The Court finds, after full and careful consideration, that the CSEA failed to show good cause to warrant the Court's reconsideration of its [Order].

38. The Court finds, after full and careful consideration, that [Mother] failed to show good cause to warrant the Court's reconsideration of its [Order].

III. [COLs]

The Court enters the following [COLs]:

1. [HRS] § 576D–10 provides in relevant part:

(c) At the time a child support obligation is first established *or at any time thereafter, the court may approve an alternative arrangement for the direct payment of child support from the obligor to the custodial parent* as an exception to the provisions for income withholding through the [CSEA], as required by sections 571–52.2(a)(1), 571–52.3, and 576E–16(a).

(d) *The court may approve an alternative arrangement for the direct payment of child support where* either:

(1) *The obligor or custodial parent demonstrates and the court finds that there is good cause not to require immediate withholding;* or

(2) A written agreement is reached between the obligor and the custodial parent and signed by both parties;

provided that in either case where the child support has been ordered previously, an alternative arrangement for direct payment shall be approved only where the obligor provides proof of the timely payment of previously ordered support. For purposes of this section, *good cause to approve an alternative arrangement shall be based upon a determination by the court, either in writing or on the record, that implementing income withholding would not be in the best interests of the child.* Such a determination shall include a statement setting forth the basis of the court's conclusion.

(Emphasis added.)

2. The Court concludes that there *is* good cause to approve the direct payment of child support arrangement, that the payment of child support through income withholding is *not* in [Daughter's] best interests, and that the direct payment of

child support arrangement *is* in [Daughter's] best interests.

3. The Court concludes that under the direct payment arrangement now in place, the child support payments are available for [Daughter's] benefit much faster than they would be through income withholding and that the direct payment arrangement eliminates the risk of delays caused by bureaucratic mistakes on the part of the CSEA.

4. The Court concludes that pursuant to HRS § 576D–10(d)(1), the existing direct payment arrangement shall continue to be the manner of payment of child support for the parties' minor child, [Daughter], until further order of the Court.

. . . .

6. The Court concludes that the CSEA shall close its case on [Father] and cease all collection and enforcement efforts against him.

. . . .

8. The Court concludes that in order to prevent [Mother] from using the CSEA to harass [Father] again, any requests by [Mother] in the future to modify existing child support orders in this case shall be submitted to the Family Court and not the CSEA.

9. The Court concludes that [Mother] is free to seek whatever information or advice she wants from the CSEA, but the CSEA shall not open a case on [Father] and institute collection and enforcement efforts against him without the Court's approval.

10. The Court concludes that it isn't necessary or appropriate for the parties to participate in the Kids First program, mediation, or the Volunteer Settlement Master program.

11. The Court also concludes that it isn't necessary or appropriate for a VGAL to be appointed in this case.

12. The Court concludes after considering all the circumstances in this case that [Father] shall be awarded attorney's fees and costs in the amount of *$2,500.00* as a sanction against [Mother] for her frivolous

actions and to prevent her from engaging in such actions in the future.

13. The Court concludes that the CSEA failed to show good cause to warrant the Court's reconsideration of its [Order].

14. The Court concludes that [Mother] failed to show good cause to warrant the Court's reconsideration of its [Order].

(Emphasis in original.)

## C. Attorney's Fees

In his Motion for Post–Decree Relief, Father sought "[a]n order directing [Mother] to reimburse [Father] for all of the legal expenses he has incurred and will incur for this motion," arguing that "Mother's sole purpose in trying to change the currently existing direct payment order" by applying for CSEA services was "to harass" him. Father also requested reimbursement for his attorney's fees in his response to the Motion to Enforce because, he argued, the motion was frivolous.

In her opposition memorandum to the Motion for Post–Decree Relief, Mother denied that she had been trying to harass Father when she requested a CSEA review of Daughter's "rights under federal law."

At the November 10, 2004 hearing, Mother opposed Father's attorney's fees request on the basis that she filed her Motion to Enforce in good faith. She added that if she were to pay the fees, she would be unable to obtain representation for Daughter.

In the Order, the family court reserved the question of reimbursement to Father for his attorney's fees and costs. The family court ordered Father's attorney to submit affidavits setting forth the amount of fees and costs Father incurred for each of the motions. On November 24, 2004, Father's attorney filed an affidavit, in which the attorney stated:

7. [Father's] attorney's fees and costs incurred for his [Motion for Post–Decree Relief] were *$6,187.81*. See Exhibit "1" attached hereto.

8. [Father's] attorney's fees and costs incurred for [Mother's] [Motion to Enforce] were *$546.87*. See Exhibit "1" attached hereto.

9. Therefore, [Father] respectfully requests a total award of *$6,734.68* in attorney's fees and costs from [Mother].

10. It is just and equitable that [Father] be awarded the full amount of this request.

11. [Father] was forced to file his [Motion for Post–Decree Relief] because [Mother] unreasonably initiated a case with the [CSEA]. This action on her part was an unwarranted attempt to modify existing orders and clearly necessitated the filing by [Father] of a Motion to *enforce* the existing direct payment of child support order.... [Mother's] action had no justifiable basis, was completely frivolous, and wasted [Father's] time, his attorneys' time, and the Court's time.

12. [Father] was also forced to respond to [Mother's] [Motion to Enforce] which contained nothing but frivolous requests. These requests had no justifiable basis, were completely frivolous, and wasted [Father's] time, his attorneys' time, and the Court's time.

13. [Mother] has a history of unreasonable conduct that has forced [Father] to incur attorney's fees unnecessarily. Most recently, on March 9, 2004, the Honorable BODE A. UALE awarded [Father] attorney's fees in the amount of *$1,057.37* when [Father] was forced to file a Motion for Post–Decree Relief (granted by Judge UALE) because [Mother] was not complying with a particular term of a prior Court Order.

14. [Mother's] claims of "poverty" at the November 10, 2004 hearing are baseless. They are the same claims she has made at past hearings. These claims have never been given any credibility (e.g. see Judge UALE's March 9, 2004 Order) because [Mother] has never substantiated them in any way.

(Emphasis in original.)

On November 24, 2004, the family court filed its Order Awarding Fees/Costs and ordered Mother to pay Father $2,500 in fees and costs.

## II.

### A. Family Court Decisions

■ Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

*Fisher v. Fisher*, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting *In re Doe*, 95 Hawai'i 183, 189–90, 20 P.3d 616, 622–23 (2001)).

### B. Child Support

■ Since no rules or guidelines have been published advising the family court how to decide a certain child support issue, the relevant appellate standard of review is the abuse of discretion standard. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Clark v. Clark*, 110 Hawai'i 459, 465, 134 P.3d 625, 631 (App.2006) (internal quotation marks, citation, and brackets omitted).

### C. FOFs

■ The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Fisher*, 111 Hawai'i at 46, 137 P.3d at 360.

### D. COLs

■ A COL is not binding upon an appellate court and is freely reviewable for its correctness. This court ordinarily reviews COLs under the right/wrong stan-

dard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

*Chun v. Bd. of Trustees of the Employees' Ret. Sys. of the State of Hawai'i*, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and brackets omitted) (quoting *Allstate Ins. Co. v. Ponce*, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)).

### E. Attorney's Fees

■ This court reviews the denial and granting of attorney's fees under the abuse of discretion standard. The same standard applies to this court's review of the amount of a trial court's award of attorney's fees. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Chun*, 106 Hawai'i at 431, 106 P.3d at 354 (internal quotation marks, citations, brackets, and ellipses omitted) (quoting *Chun v. Bd. of Trustees of the Employees' Ret. Sys. of the State of Hawai'i*, 92 Hawai'i 432, 439, 992 P.2d 127, 134 (2000)).

## III.

Preliminarily, we note that Mother's application to CSEA was not included in the record on appeal. Hence, we do not know if, therein, Mother expressed an intention to void the direct payment arrangement and/or requested that CSEA institute income withholding. We address Mother's points of error to the best of our ability, based on the evidence in the record on appeal.

### A. The Order, FOFs, and COLs

Mother argues that the family court abused its discretion by granting Father's Motion for Post–Decree Relief and denying her Motion to Enforce. Hence, she contends that FOFs 25, 26, and 28 are clearly erroneous and COLs 2–4, 6, and 8–9 are wrong.

## 1. HRS Chapters 576D and 576E

Mother states in her opening brief that she applied for CSEA services because she wanted CSEA to help review and possibly adjust the child support amount. She contends she was concerned about the child support amount because during the divorce proceedings, Father never filed an Income and Expense Statement and no Child Support Guidelines were filed. Mother argues that she was entitled to file an application with CSEA pursuant to HRS Chapters 576D and 576E and 45 C.F.R. § 301.10. She further argues that the family court violated those provisions when it ordered CSEA to cease all collection and enforcement efforts against Father and close its case on Father and ordered her to direct future support order modification requests to the family court, not to CSEA.

Related to this argument is Mother's allegation that COLs 2–4, 6, and 8–9 are wrong. Those COLs provide:

2. The Court concludes that there *is* good cause to approve the direct payment of child support arrangement, that the payment of child support through income withholding is *not* in [Daughter's] best interests, and that the direct payment of child support arrangement *is* in [Daughter's] best interests.

3. The Court concludes that under the direct payment arrangement now in place, the child support payments are available for [Daughter's] benefit much faster than they would be through income withholding and that the direct payment arrangement eliminates the risk of delays caused by bureaucratic mistakes on the part of the CSEA.

4. The Court concludes that pursuant to HRS § 576D–10(d)(1), the existing direct payment arrangement shall continue to be the manner of payment of child support for the parties' minor child, [Daughter], until further order of the Court.

. . . .

6. The Court concludes that the CSEA shall close its case on [Father] and cease all collection and enforcement efforts against him.

. . . .

8. The Court concludes that in order to prevent [Mother] from using the CSEA to harass [Father] again, any requests by [Mother] in the future to modify existing child support orders in this case shall be submitted to the Family Court and not the CSEA.

9. The Court concludes that [Mother] is free to seek whatever information or advice she wants from the CSEA, but the CSEA shall not open a case on [Father] and institute collection and enforcement efforts against him without the Court's approval.

(Emphasis in original.) Also related to this argument is Mother's contention that the family court's FOF 28 is clearly erroneous. That FOF provides:

28. [Mother] is free to recalculate the child support amount any time she wants and bring the child support amount issue back to Family Court if she believes a change in the child support amount is warranted. Although determining the child support amount could be a complicated issue due to the fact that [Father's] income would likely exceed the *$10,000.00* per month limit of the child support guidelines worksheet, [Mother] is free to do this if she wants.

Preliminarily, we should note that pursuant to HRS §§ 576E–1, –2, and –3 (2006 Repl.), CSEA, as an agency of the Department of the Attorney General of the State of Hawai'i, has "concurrent jurisdiction with the [family] court in all proceedings in which a support obligation is established, modified, or enforced" and "may establish, modify, suspend, terminate, and enforce child support obligations ... using the administrative process provided in [HRS Chapter 576E] on all cases for which the department [of the attorney general] has a responsibility under Title IV–D [3] of the Social Security Act[.]" HRS § 576E–2 (footnote not in original). Title IV–D regulates cases involving parents who apply directly to CSEA for services in non-

---

**3.** 42 U.S.C. §§ 651–669; *see also Hodges v.* *Thompson,* 311 F.3d 316, 318 (4th Cir.2002).

public assistance cases. 42 U.S.C. § 654(4)(A)(ii) (2006). Also, 45 C.F.R. § 302.33(a)(1)(i) (1996) provides in relevant part that "[t]he State [child support enforcement] plan must provide that the services established under the plan shall be made available to any individual who ... [f]iles an application for the services with the [CSEA]."

### a. Voiding the direct payment arrangement

■ When a child support obligation is first established, or at any time thereafter, the family court may approve an alternative arrangement for the direct payment of child support wherein the "obligor" parent makes his or her child support payments directly to the "obligee" parent, instead of to CSEA. HRS § 576D–10(c) (2006 Repl.). This "direct payment" option is the only exception to the mandatory provisions, as set forth in HRS §§ 571–52.2(a)(1) (2006 Repl.), 571–52.3 (2006 Repl.), and 576E–16(a) (2006 Repl.), for income withholding through CSEA. In the instant case, the family court ordered the direct payment of child support, rather than income withholding through CSEA.

HRS § 576D–10(e) (2006 Repl.) provides that "[a]ny alternative arrangement for direct payment shall provide that either parent may void the arrangement at any time and apply for services from [CSEA] to act as agent to receive payments from the obligor parent[.]" Hence, Mother had the right to void the direct payment arrangement at any time and apply to CSEA to collect and disburse payments.

### b. Review of child support amount

Mother contends she was entitled to petition CSEA for a review of the child support amount pursuant to federal and state law.

45 C.F.R. § 303.4(c) (1994) provides:

§ 303.4 Establishment of support obligations.

For all cases referred to the [CSEA] or applying under § 302.33 of this chapter, [CSEA] must:

. . . .

(c) Periodically review and adjust child support orders, as appropriate, in accordance with § 303.8.

Section 303.8 (2006) provides in relevant part:

§ 303.8 Review and adjustment of child support orders.

. . . .

(b) Required procedures. Pursuant to section 466(a)(10) of the [Social Security] Act, when providing services under this chapter:

(1) The State must have procedures under which, every 3 years (or such shorter cycle as the State may determine), upon the request of either parent, or, if there is an assignment under part A, upon the request of the State agency under the State plan or of either parent, the State shall with respect to a support order being enforced under this part, taking into account the best interests of the child involved:

(i) *Review and, if appropriate, adjust the order in accordance with the guidelines established pursuant to section 467(a) of the [Social Security] Act if the amount of the child support award under the order differs from the amount that would be awarded in accordance with the guidelines*[.]

. . . .

(4) The State must have procedures which provide that any adjustment under paragraph (b)(1)(i) of this section shall be made without a requirement for proof or showing of a change in circumstances.

(Emphasis added.)

HRS § 576D–6(a)(10) (2006 Repl.) provides that CSEA shall "[e]stablish and utilize procedures for periodic review and modification of child support orders in accordance with Title IV–D."

HRS § 576D–7(e) (2006 Repl.) provides that "[t]he responsible or custodial parent for which child support has previously been ordered shall have a right to petition the family court or [CSEA] not more than once every three years for review and adjustment of the child support order without having to show a

change in circumstances." This rule is reiterated in HRS § 580–47(e) (2006 Repl.).[4]

HRS § 576D–10(h) (2006 Repl.) provides that, "[a]ny alternative arrangement for direct payment [of child support] shall pertain only to the method of payment of child support. The amount of child support shall be determined according to the child support guidelines pursuant to section 576D–7 and section 576E–15."

### c. CSEA's actions

In its motion for reconsideration, CSEA maintained that pursuant to federal law, once Mother applied for CSEA services, CSEA was required to open a case on Father and void the direct payment arrangement. CSEA cited to 45 C.F.R. §§ 303.2(b) (1989), 302.33(a) (1996), and 303.6 (1990) in support of its position.

45 C.F.R. § 303.2(b) provides in relevant part that "[f]or all cases referred to [CSEA] or applying for services under § 302.33 of this chapter, [CSEA] must, within no more than 20 calendar days of receipt or referral of a case or filing of an application for services under § 302.33, open a case by establishing a case record[.]"

Section 303.6 provides in relevant part:

§ 303.6 Enforcement of support obligations.

For all cases referred to [CSEA] or applying for services under section 302.33 [5] in which the obligation to support and the amount of the obligation have been established, [CSEA] must maintain and use an effective system for:

(a) Monitoring compliance with the support obligation;

(b) Identifying on the date the parent fails to make payments in an amount equal to the support payable for one month, or on an earlier date in accordance with State law, those cases in which there is a failure to comply with the support obligation; and

(c) Enforcing the obligation by:

(1) Initiating income withholding in accordance with § 303.100;

(2) *Taking any appropriate enforcement action* (except income withholding and Federal and State income tax refund offset) ... *within no more than 30 calendar days of identifying a delinquency or other support-related noncompliance with the order or the location of the noncustodial parent,* whichever occurs later[;]

(3) Submitting once a year all cases which meet the certification requirements under § 303.102 of this part and State guidelines developed under § 302.70(b) of this title for State income tax refund offset, and which meet the certification requirements under § 303.72 of this part for Federal income tax refund offset; and

(4) In cases in which enforcement attempts have been unsuccessful, at the time an attempt to enforce fails, examining the reason the enforcement attempt failed and determining when it would be appropriate to take an enforcement action in the future, and taking an enforcement action in accordance with the requirements of this section at that time.

(Emphasis added; footnote not in original.)

 Reviewing the applicable state and federal rules, we see no authority for CSEA's purporting to void the direct payment arrangement and direct payments to itself simply because Mother applied for CSEA services. There is no evidence in the record on appeal that either party in the instant case voided the direct payment arrangement. Further, CSEA has the authority to take appropriate enforcement action besides initiating income withholding and Federal and State income tax refund offset only after "identifying a delinquency or other support-related non-compliance with the order or the location of the noncustodial parent." 45

---

4. HRS § 580–47(e) provides in relevant part that "[t]he responsible or custodial parent shall have the right to petition the family court or [CSEA] not more than once every three years for review and adjustment of the child support order without having to show a change in circumstances."

5. 45 C.F.R. § 302.33 applies to CSEA services for individuals who are not receiving Title IV–A Medicaid or Title IV–E foster care assistance.

C.F.R. § 303.6(c)(2). In the instant case, it is undisputed that Father did not fail to comply with the child support order in any way.

#### d. The Order and FOF 28

The family court erroneously found that CSEA had instituted "income withholding." CSEA voided Father's direct child support payment arrangement and informed Father that his future support payments were to be paid directly to CSEA. Nevertheless, the family court did not abuse its discretion by ordering CSEA to cease all collection and enforcement efforts against Father. CSEA apparently had no basis for voiding Father's direct payment arrangement and directing the payments to itself.

However, the family court abused its discretion by ordering CSEA to close its case on Father because Mother had a right to petition CSEA for a review of the child support amount, pursuant to HRS § 576D-7(e) and 45 C.F.R. §§ 303.2(b), 303.4(c), 303.8, and 302.33. Section 303.2(b) provides in relevant part that "[f]or all cases ... applying for services under § 302.33 of this chapter, [CSEA] must, within no more than 20 calendar days of receipt or referral of a case or filing of an application for services under § 302.33, open a case by establishing a case record[.]" Presumably, in the instant case, CSEA was authorized to maintain an open case on Father while it conducted a review of the parties' child support amount.

On a related note, although FOF 28 is misleading in that it suggests Mother, alter-

natively, was prohibited from seeking CSEA review of the support amount, that FOF was not clearly erroneous. Technically, Mother was free to recalculate the child support amount any time she wanted and to bring the support amount issue back to family court if she believed a change in the support amount was warranted. The remainder of the FOF consisted of the family court's opinion, which also was not clearly erroneous.

The family court also abused its discretion by ordering Mother to direct any future child support modification requests to the court and not to CSEA and by ordering CSEA not to open a future case on Father and institute collection and enforcement efforts against him without the court's approval. Pursuant to HRS § 576D-10(e), each party has the right to void the direct payment arrangement at any time and apply for collection and disbursement services from CSEA.

Further, Mother or Father may wish to apply for other CSEA services. For example, if Father were to become delinquent in his payments, Mother would have the right, pursuant to HRS § 576D-14(a) (2006 Repl.), to apply for enforcement services from CSEA, including a request for income withholding. Indeed, either party could request income withholding from CSEA, even if there were not an arrearage or delinquency in child support payments. HRS § 576D-14(a).[6] *See also* 45 C.F.R. § 303.100(a)(1) (2003) ("The State must ensure that in the case of each noncustodial parent against whom a support order is or has been issued or modified in the State, and is being en-

---

6. HRS § 576D-14(a) provides:
 § 576D-14. Implementation of income withholding. (a) For cases being enforced under the Title IV-D state plan or for those parents applying to the agency for services, the income of an obligor who receives income on a periodic basis and who has a support obligation imposed by a support order issued or modified in the State before January 1, 1994, and issued or modified thereafter, if not otherwise subject to withholding, shall become subject to withholding as provided in subsection (b) if arrearages or delinquency occur, without the need for a judicial or administrative hearing. The income of an obligor shall become subject to withholding without regard to whether there are arrearages or delinquency upon the agency receiving a request for in-

come withholding from the obligee and a determination made by the agency that income withholding is appropriate, or upon the agency receiving a request for income withholding from the obligor. The agency shall implement such withholding without the necessity of any application in the case of a child with respect to whom services are already being provided under Title IV-D and shall implement withholding on the basis of an application for services under Title IV-D in the case of any other child on whose behalf a support order has been issued or modified. In either case, the withholding shall occur without the need for any amendment to the support order involved or for any further action by the court or other entity that issued the order.

forced under the State plan, so much of his or her income as defined in sections 466(b)(1) and (8) of the [Social Security] Act must be withheld, in accordance with this section, as is necessary to comply with the order.").

### e. Result

Given the foregoing, the family court abused its discretion in ordering CSEA to close its case on Father and ordering Mother to direct future support order modification requests to the family court, not to CSEA. Hence, the portion of COL 6 ordering CSEA to close its case on Father is wrong, as are COLs 8 and 9.

### 2. Finding that implementing income withholding would not be in the best interest of Daughter

Mother maintains that the family court erred by failing to determine either in writing or on the record that implementing income withholding would not be in Daughter's best interest, in violation of HRS § 576D–10(d). Given our holding in part A.1 of this discussion, this point is moot.

### 3. Implementing income withholding, in Daughter's best interest

Mother contends that implementing income withholding would be in Daughter's best interest because "[i]t is in [Daughter's] best interest that the correct amount of child support is paid." Related to this argument is Mother's contention that the family court's FOFs 25 and 26 are clearly erroneous. Given our dicta and holding in part A.1 of this discussion, this point is moot.

### 4. Court minutes

Mother alleges that the portion of the family court's Order that states CSEA must close its case on Father and that any future requests by Mother for modification of child support must be submitted to the family court and not to CSEA were not reflected in the Court Minutes of the hearing on the Motion for Post–Decree Relief and, therefore, that portion violated HFCR Rule 58. Given our holding in part A.1 of this discussion, we need not address this point.

### B. Timeliness of November 8, 2004 pleadings

Mother contends the family court erred in not striking Father's November 8, 2004 pleadings because she did not receive copies of such prior to the hearing and Father failed to file the pleadings within 48 hours of the November 10, 2004 hearing. She alleges that Father's late filing severely prejudiced her because she was not fully prepared to respond to the pleadings at the hearing. In support of her argument, Mother cites to HFCR Rule 6(d).

Given our holding in part A.1 of this discussion, we need not address this issue.

### C. Motion to Enforce

Mother argues that COLs 10 and 11 are wrong. Those COLs provide:

10. The Court concludes that it isn't necessary or appropriate for the parties to participate in the Kids First program, mediation, or the Volunteer Settlement Master program.

11. The Court also concludes that it isn't necessary or appropriate for a VGAL to be appointed in this case.

In Mother's Motion to Enforce, she requested the following:

1. Pursuant to HRS Mandatory [sic] attendance for the Kid's [sic] First Program and Memorandum dated April 19, 19994 [sic] from the Honorable Judge George M. Masuoka. See Exhibit "1".

2. Request for mediation. Mediation has been found to significantly reduce the need for litigation, and I believe that mediating [this case] will significantly lower the cost for the taxpayer. See Exhibit "2".

3. Request for voluntary settlement master for all outstanding issues.

4. Request for [VGAL] to preserve [Daughter's] rights.

In its February 22 FOFs/COLs, the family court found the following:

30. After the parties' divorce was concluded, [Father] successfully completed parenting counseling.... He therefore gained the equivalent knowledge presented

by the Kids First program (or more) and doesn't have to participate in that program now, more than eight (8) years after the divorce was concluded.

31. Based on the history of this case, mediation is not likely to be successful and therefore the parties shall not be required to attempt mediation.

32. Based on the history of this case, the Volunteer Settlement Master program is also not likely to be successful and therefore the parties shall not be required to participate in that program.

33. The [VGAL] program applies only to Child Protective Services ("CPS") cases. Accordingly, the appointment of a VGAL is not appropriate or warranted for the present case.

Mother provides no legal authority for her argument that the family court erred in denying her Motion to Enforce, and we find no such authority for her contention. Therefore, we hold that the family court did not abuse its discretion in denying the Motion to Enforce because the court did not disregard "rules or principles of law or practice to the substantial detriment of a party litigant" and the court's decision did not clearly exceed the bounds of reason. *Fisher*, 111 Hawai'i at 46, 137 P.3d at 360. Accordingly, COLs 10 and 11 are not wrong.

### D. Attorney's fees

Mother asserts that FOFs 34, 35, and 36 are clearly erroneous and COL 12 is wrong because (1) Mother's actions involving CSEA were not frivolous or without merit, in that state and federal law recognized her right to apply at any time for CSEA services in lieu of direct child support payments, and (2) her request in her Motion to Enforce that the parties be allowed to utilize various programs established by the family court was not frivolous.

FOFs 34, 35, and 36 provide:

34. The Court finds that [Mother] initiated her application with the CSEA and filed her October 29, 2004 Motion to Enforce for the sole and improper purpose of harassing [Father].

35. The Court finds that these actions by [Mother] were frivolous as they were manifestly and palpably without merit so as to indicate bad faith on the part of [Mother].

36. The Court also finds that [Father] incurred significant attorney's fees and costs in responding to [Mother's] actions, first in filing his October 1, 2004 Motion for Post–Decree Relief which was essentially a motion to enforce the existing court order providing for the direct payment of child support and second in filing his November 8, 2004 Affidavit in Response to [Mother's] October 29, 2004 Motion to Enforce which, as stated above, was a frivolous Motion.

COL 12 provides that "[t]he Court concludes after considering all the circumstances in this case that [Father] shall be awarded attorney's fees and costs in the amount of *$2,500.00* as a sanction against [Mother] for her frivolous actions and to prevent her from engaging in such actions in the future." (Emphasis in original.)

The family court found that Mother had "initiated her application with the CSEA and filed her [Motion to Enforce] for the sole and improper purpose of harassing [Father]" and that those "actions by [Mother] were frivolous as they were manifestly and palpably without merit so as to indicate bad faith on the part of [Mother]." The family court awarded Father attorney's fees as a "sanction against [Mother] for her frivolous actions and to prevent her from engaging in such actions in the future."

With regard to an award of attorney's fees based on a frivolous claim, HRS § 607–14.5 (Supp.2007) provides in relevant part:

§ 607–14.5 Attorneys' fees and costs in civil actions. (a) In any civil action in this State where a party seeks ... injunctive relief ... against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, whether or not the party was a prevailing party, and enter as part of its order, for which execution may issue, a reasonable sum for attorneys' fees and costs, in an amount to be determined by the court upon a specific finding that all or

a portion of the party's claim or defense was frivolous as provided in subsection (b).

(b) In determining the award of attorneys' fees and costs and the amounts to be awarded, the court must find in writing that all or a portion of the claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action. In determining whether claims or defenses are frivolous, the court may consider whether the party alleging that the claims or defenses are frivolous had submitted to the party asserting the claims or defenses a request for their withdrawal as provided in subsection (c). If the court determines that only a portion of the claims or defenses made by the party are frivolous, the court shall determine a reasonable sum for attorneys' fees and costs in relation to the frivolous claims or defenses.

(c) A party alleging that claims or defenses are frivolous may submit to the party asserting the claims or defenses a request for withdrawal of the frivolous claims or defenses, in writing, identifying those claims or defenses and the reasons they are believed to be frivolous.

As to whether a claim is frivolous, the Hawai'i Supreme Court has held:

This court in *R.W. Meyer, Ltd. v. McGuire*, 36 Haw. 184, 187 (1942), stated that "[f]or an assignment of error to be frivolous ... it must be manifestly and palpably without merit." In *Kawaihae v. Hawaiian Insurance Companies*, 1 Haw. App. 355, 619 P.2d 1086 (1980), the Intermediate Court of Appeals (ICA), relying upon *McGuire*, defined a frivolous claim as a claim so "manifestly and palpably without merit, so as to indicate bad faith on [the pleader's] part such that argument to the court was not required." 1 Haw.App. at 361, 619 P.2d at 1091.

*Coll v. McCarthy*, 72 Haw. 20, 29, 804 P.2d 881, 887 (1991).

Given our holding that Mother had the right, pursuant to federal and state law, to petition CSEA for a review of the child support amount, we do not believe that those actions on her part were so "manifestly and palpably without merit, so as to indicate bad

faith" on her part. *Id.* at 29, 804 P.2d at 887. Further, there is no evidence in the record on appeal that Mother filed her Motion to Enforce in bad faith.

The family court abused its discretion by awarding attorney's fees and costs to Father. Hence, FOFs 34, 35, and 36 are clearly erroneous and COL 12 is wrong.

## IV.

We vacate (1) the "Order Following Hearing on Plaintiff's October 1, 2004 Motion for Post–Decree Relief and Defendant's October 29, 2004 Motion to Enforce Family Court Policies and Order Plaintiff to Attend Kids First, Request for Mediation, Request for Voluntary Settlement Master for All Outstanding Issues, and Request for Voluntary GAL to Preserve [Daughter's] Rights," filed on November 30, 2004; (2) the "Order Awarding Attorney's Fees and Costs to Plaintiff," filed on November 24, 2004; and (3) the "Order Denying Defendant's Motion for Reconsideration and/or New Trial on Order Following Hearing on Plaintiff's October 1, 2004 Motion to [sic] Post–Decree Relief, Etc., Filed December 9, 2004," filed on January 4, 2005, and remand this case for proceedings consistent with this opinion.

