EDWARD COLL, Plaintiff–Appellant and Cross–Appellee, v. WILLIAM J. McCARTHY, Defendant, and HAWAIIAN INSURANCE & GUARANTY COMPANY, LTD., Defendant and Counterclaim Plaintiff–Appellee and Cross–Appellant, v. EDWARD COLL, ROBERT P. MARX and GLEN J. DRYER, Counterclaim Defendants

No. 14105

(CIV. NO. 88–32K)

JANUARY 11, 1991

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

## OPINION OF THE COURT BY MOON, J.

Plaintiff–Appellant Edward Coll (Coll) appeals from an order granting summary judgment in favor of Defendant and Counter-claim Plaintiff–Appellee Hawaiian Insurance & Guaranty Company, Ltd. (HIG). HIG cross–appeals from an order denying attorney's fees. We affirm the summary judgment in favor of HIG and reverse the order denying attorney's fees based on our finding that the complaint brought by Coll against HIG was frivolous.

### I.

In April 1985, while riding his moped, Coll was injured as a result of being struck by an automobile owned by Dawn Murray (Murray). At the time of the accident, Murray was insured under an insurance policy issued by HIG. As the operator of a moped, Coll was not required to have no–fault insurance coverage of his own. Pursuant to HRS § 294–4(1)(A) (1985),[1] HIG was required to assume the obligation as no–fault carrier for Coll.

---

[1] HRS § 294–4(1)(A), which was in effect at the time of the accident, provides, in pertinent part:

Following the accident, Coll filed an application for no–fault benefits with HIG seeking to collect medical expenses totaling $15,663.30 as well as lost wages. Because Coll's claims exceeded the no–fault policy limit of $15,000.00, HIG tendered a lump sum payment of $15,000.00 to Coll by way of a draft made payable to him. The draft was forwarded to his then–attorney, Defendant William J. McCarthy (McCarthy), [2] and bore the following notation on its face: "WHEN PROPERLY ENDORSED THIS DRAFT CONSTITUTES PAYMENT FOR: Maximum Limit of No–Fault Benefits payable under this policy." Coll then endorsed the draft to McCarthy, who deposited it into his client trust account at the Bank of Hawaii.

HIG subsequently tendered payment of an additional $25,000.00 to Coll in settlement of Coll's claims based on Murray's liability and obtained a release of all claims arising out of the accident. The settlement draft was also deposited into McCarthy's client trust account.

Sometime thereafter, Coll was unable to pay medical expenses owing to the Queen's Medical Center (Queen's) for treatment of injuries received as a result of the accident. In an action

---

In the case of injury arising out of a motor vehicle accident to any person, including the owner, operator, occupant, or user of the insured motor vehicle, or any pedestrian (including a bicyclist), or any user or operator of a moped as defined in section 249–1, . . . who sustains accidental harm as a result of the operation, maintenance or use of the vehicle, the insurer shall pay, without regard to fault, to the person an amount equal to the no–fault benefits payable to the person as a result of the injury[.]

Chapter 294 has since been recodified as Chapter 431:10C (1987 spec. pamphlet).

[2] HIG's cover letter of September 18, 1985 stated that the payment "represents the maximum No–Fault coverage available under our insured's policy. Medical charges as well as Mr. Coll's wage loss claim exceeded the coverage, therefore, payment is being made to your client."

brought by Queen's, default judgment was entered against Coll in the amount of $13,259.30.

On February 9, 1988, Coll filed a complaint naming McCarthy and HIG as defendants. In his complaint, Coll alleged that HIG was negligent in paying the $15,000.00 no–fault benefits to McCarthy in violation of HRS Chapter 294, Hawaii Motor Vehicle Insurance Law. The allegations against McCarthy included accusations of conversion, fraud, and comingling of the amounts paid by HIG.

HIG counterclaimed against Coll alleging that the complaint was frivolous and constituted an abuse of process. As part of the counterclaim, HIG alleged that:

> 7. On September 18, 1985, HIG sent draft #R23919 in the amount of $15,000 made payable, "To the order of EDWARD COLL" to McCARTHY. Said payment was the no–fault insurance policy limits and said draft was endorsed by Coll and deposited into McCARTHY's trust account at the Kona Branch of the Bank of Hawaii on September 20, 1985.

In his Answer, Coll admitted the aforestated allegation.

On June 7, 1988, HIG filed a motion for summary judgment asserting that the no–fault benefits were paid to Coll, not McCarthy, and that the manner of payment (lump sum) did not violate HRS Chapter 294. Following a hearing on the motion, the trial court entered an order granting summary judgment. Subsequently, HIG filed a motion for attorney's fees on the grounds that Coll's claim was frivolous and, alternatively, that as the prevailing party, it was entitled to attorney's fees. The trial court denied the motion and in finding that Coll's claim was not frivolous stated:

> Although this is a close question it would seem that the parties—the plaintiff made his claim in good faith. He may not have had the sufficient factual support to withstand the Motion for Summary Judgment, but the Court

> does not find that it is so clearly and palpably bad that no argument is able to convince the Court that the claim was without merit so the Court will deny the motion for attorney's fees.

Transcript of Proceedings at 15. Both Coll and HIG timely appealed.

## II.

On review of a summary judgment, the standard to be applied by the appellate court is identical to that employed by the trial court. Under Rule 56(c) of the Hawaii Rules of Civil Procedure (HRCP), "a summary judgment will be rendered only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Miller v. First Hawaiian Bank*, 61 Haw. 346, 349, 604 P.2d 39, 41 (1979).

"Questions of negligence and proximate cause are ordinarily not susceptible to summary adjudication. But where the facts are undisputed or are susceptible of only one reasonable interpretation, the trial court is under a duty to rule upon the question of negligence or proximate cause as a matter of law." *De Los Santos v. State*, 65 Haw. 608, 610–11, 655 P.2d 869, 871 (1982) (citing *Pickering v. State*, 57 Haw. 405, 557 P.2d 125 (1976); *cf. Tsugawa v. Reinartz*, 56 Haw. 67, 527 P.2d 1278 (1974)).

Therefore, with respect to Coll's appeal, the question before us is whether Coll has raised any genuine issue of material fact that would cause us to reverse the summary judgment granted by the trial court. It is clear that Coll has failed to do so.

In his complaint, Coll alleged that:

48. Defendant *HIG paid to Defendant McCARTHY* Fifteen Thousand Dollars ($15,000.00) representing

Plaintiff's maximum no–fault benefits, in violation of Chapter 294 Hawaii Revised Statutes.

49. As a direct and proximate result of Defendant HIG's unlawful acts/omissions and/or negligence Plaintiff has suffered damages in an amount to be proven at the time of trial and as prayed for herein.

(Emphasis added.) The record plainly reflects and Coll admits that HIG tendered the maximum amount of no–fault benefits under its insurance policy directly payable to Coll, who endorsed the draft which was then deposited in McCarthy's trust account.

However, Coll argued in opposition to HIG's motion for summary judgment that the action taken by HIG in tendering the maximum no–fault benefits in lump sum to him, as opposed to paying the medical providers directly, was in violation of HRS § 294–4(2) (1985). We find this argument to be totally without merit.

HRS § 294–4(2) provides:

Payment of no–fault benefits shall be made as the benefits accrue, except that in the case of death, payment of the benefits may, at the option of the beneficiary, be made immediately in a lump sum payment.

In interpreting HRS § 294–4(2), as with any statute, we look to the plain and unambiguous language and give effect to the law according to its plain and obvious meaning. *Strouss v. Simmons*, 66 Haw. 32, 50, 657 P.2d 1004, 1016 (1982) (quoting *In re Hawaiian Tel. Co.*, 61 Haw. 572, 577–78, 608 P.2d 383, 387 (1980)). Nothing in HRS § 294–4(2), nor in any other provision of the Hawaii Motor Vehicle Insurance Law, requires an insurer to pay no–fault benefits directly to the medical provider. On the contrary, HRS § 294–4(1)(A) contains the language, "the insurer shall pay . . . *to the person* [injured] an amount equal to the no–fault benefits payable to the person as a result of the injury[.]" (Emphasis added.) For this court to require that insurers pay benefits

directly to the medical provider would be to fashion a requirement where the legislature has intended none.

Coll also argues that HRS § 294–4(2) mandates that a lump sum payment be made only in the case of death. We acknowledge that the statute provides that no–fault benefits shall be paid as the benefits accrue except for instances of death. However, there is no prohibition of lump sum payments where the accrued medical benefits and wage loss exceed the maximum limits of the no–fault benefits at the time the claim is made. HRS § 294–4(3) (1985) provides in pertinent part:

> Payment of no–fault benefits shall be made within thirty days after the insurer has received reasonable proof of the fact and amount of benefits accrued, and demand for payment thereof.

In this case, Coll's medical expenses and wage loss exceeded HIG's $15,000.00 maximum liability under the no–fault policy and were already accrued when he filed the application for no–fault benefits which was HIG's first notice of the claim. We find nothing in the statutory scheme prohibiting HIG from tendering the no–fault benefits to Coll in a lump sum payment under these circumstances.

Coll contends for the first time on appeal that factual issues exist as to whether no–fault benefits were sufficient to pay for his medical expenses and wage loss. Ordinarily, failure to raise or properly reserve issues at the trial level would be deemed waived. *Mizoguchi v. State Farm Mut. Auto. Ins. Co.*, 66 Haw. 373, 383, 663 P.2d 1071, 1077 (1983) (citing *Miller v. Leadership Hous. Sys., Inc.*, 57 Haw. 321, 325, 555 P.2d 864, 867 (1976), and *Fujioka v. Kam*, 55 Haw. 7, 9, 514 P.2d 568, 570 (1973)). Although we are not required to consider Coll's contention made for the first time on appeal, we will briefly address this issue to negate any belief that a meritorious claim exists against HIG.

Coll argues that a health care provider, "HMSA," paid certain billings by medical providers and therefore the outstanding balance of the medical bills as well as Coll's wage loss could have been satisfied by the no–fault benefits. Coll contends "[i]t would have been a very simple matter for HIG to pay the medical care providers in the order that the respective billings were issued or the services were rendered. Had HIG done so, most or all of the outstanding medical bills would have been paid, in addition to allowing money to COLL for wage loss."[3] Coll's Opening Brief at 8–9. This argument defies logic as it would have been just as simple for Coll, who received the lump sum payment of $15,000.00, to pay the medical providers directly after HMSA's payments.

### III.
### A.

In its cross–appeal, HIG asserts that the trial court erred in denying its claim for attorney's fees on alternative grounds: (1) HIG, as the prevailing party in an assumpsit action should be awarded attorney's fees under HRS § 607–14 (1985),[4] or (2) Coll's claim against HIG was frivolous thus justifying an award of

---

[3] A thorough search of the record fails to reveal support for Coll's theory as there is no evidence of a) the total amount of medical expenses paid by HMSA, b) the balance of medical billings after payment by HMSA, or c) the method of calculating bills paid by HMSA chronologically to determine the amounts of no–fault benefits including loss of wages to be paid on an accrued basis.

[4] HRS § 607–14 provides, in pertinent part:

In all the courts, in all actions in the nature of assumpsit there shall be taxed as attorneys' fees, in addition to the attorneys' fees otherwise taxable by law, to be paid by the losing party and to be included in the sum for which execution may issue, a fee which the court determines to be reasonable[.]

attorney's fees under HRS § 431:10C–211(d) (1987 spec. pamphlet) [5] or HRS § 607–14.5 (1985). [6]

The trial court's conclusion that Coll's claim against HIG was "made in good faith" and thus not frivolous presents mixed questions of fact and law. Where the court's conclusions are dependent upon the facts and circumstances of each individual case, the clearly erroneous standard of review applies. *Pacheco v. Hilo Elec. Light Co.*, 55 Haw. 375, 520 P.2d 62 (1974). *See also* Yoshii, *Appellate Standards of Review in Hawaii*, 7 U. Haw. L. Rev. 273, 288–90 (1985). A finding is clearly erroneous where the court is left with a firm and definite conviction that a mistake has been committed. *Aiea Lani Corp. v. Hawaii Escrow & Title, Inc.*, 64 Haw. 638, 641, 647 P.2d 257, 259 (1982).

We review the trial court's denial of attorney's fees under the abuse of discretion standard. *Makani Dev. Co. v. Stahl*, 4 Haw. App. 542, 670 P.2d 1284 (1983). Discretion is abused whenever the court, in exercising it, "exceeds the bounds of reason, all of the

---

[5] HRS § 431:10C–211(d) provides (emphasis added):

(d) An insurer or self–insurer may be allowed an award of a reasonable sum as attorney's fees based upon actual time expended, and all reasonable costs of suit for its defense against a person making claim against the insurer or self–insurer, within the discretion of the court upon judicial proceeding or the commissioner upon administrative proceeding where the claim is determined to be fraudulent or *frivolous*. Such attorney's fees and all reasonable costs of suit so awarded may be treated as an offset against any benefits due or to become due to the person.

[6] HRS § 607–14.5 provides (emphasis added):

(a) In any civil action in this State where a party seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, and enter as part of its order, for which execution may issue, a reasonable sum for attorneys' fees, in an amount to be determined by the court upon a specific finding that the party's claim or defense was *frivolous*; provided the amount shall not exceed twenty–five percent of any amount originally prayed for by the party assessed.

circumstances before it being considered." *Ariyoshi v. Hawaii Pub. Employment Relations Bd.*, 5 Haw. App. 533, 542, 704 P.2d 917, 925 (1985) (citing *Berry v. Chaplin*, 74 Cal. App. 2d 669, 169 P.2d 453, 456 (1946)).

In addressing HIG's contention that it is entitled to attorney's fees, we first consider whether Coll's claim against HIG was frivolous.

This court in *R. W. Meyer, Ltd. v. McGuire*, 36 Haw. 184, 187 (1942), stated that "[f]or an assignment of error to be frivolous . . . it must be manifestly and palpably without merit." In *Kawaihae v. Hawaiian Insurance Companies*, 1 Haw. App. 355, 619 P.2d 1086 (1980), the Intermediate Court of Appeals (ICA), relying upon *McGuire*, defined a frivolous claim as a claim so "manifestly and palpably without merit, so as to indicate bad faith on [the pleader's] part such that argument to the court was not required." 1 Haw. App. at 361, 619 P.2d at 1091. In *Kawaihae*, plaintiff–appellee brought a claim for no–fault benefits as a dependent of the deceased who died in an automobile accident. The primary issue of dependency focused on whether the deceased had provided for over one–half of her support during that time. The jury in the trial below denied plaintiff's claim for no–fault benefits, but the court, upon motion pursuant to HRS § 294–30 (1985),[7] awarded her

(b) In determining the award of attorneys' fees and the amounts to be awarded, the court must find in writing that all claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action.

[7] HRS § 294–30 provides:

**Claimant's attorney's fees.** (a) A person making a claim for no–fault benefits may be allowed an award of a reasonable sum for attorney's fees, and reasonable costs of suit in an action brought by or against an insurer who denies all or part of a claim for benefits under the policy, unless the court or the commissioner, upon judicial or administrative proceedings, respectively, determines that the claim was fraudulent, excessive, or frivolous.

attorney's fees and costs. The appellate court determined that under HRS § 294–30 the trial court has the discretion to award attorney's fees and costs to a losing claimant who files for no–fault benefits unless the trial court determines that the claim was fraudulent, excessive, or frivolous. Hawaiian Insurance Companies appealed arguing, in part, that plaintiff's claim was frivolous because plaintiff knew that she was in fact supporting the deceased, premised on the evidence showing that plaintiff received a greater dollar amount from welfare and wages than the deceased. The ICA looked outside the pleadings and affirmed the trial court's finding that plaintiff's claim was not frivolous on the grounds that there were genuine issues of material fact regarding the question as to whether deceased's additional contributions of food from hunting, fishing, and monies received therefrom would be of a value (with his welfare and wages) that exceeded one–half the support of plaintiff.

In the instant case, the facts are undisputed. Coll's specific allegation in his complaint was that HIG wrongfully paid the maximum no–fault benefits to McCarthy thereby violating the Hawaii Motor Vehicle Insurance Law. Since HRS § 294–4(1)(A) requires payment to be made to "the person" injured, a bonafide claim was stated. However, this bare allegation was, in fact, false when made as shown by Coll's admission to HIG's counterclaim that he received HIG's draft which was made payable to himself and that it was he who endorsed the draft over to McCarthy. It is difficult to conceive of a stronger case for frivolousness regarding this claim as defined by our courts. First, there was no need to look beyond the pleadings or to invite argument to conclude that "the claim is manifestly and palpably without merit." Secondly, bad faith is clearly indicated by Coll's knowledge at the time of the filing of the complaint that he was the payee on the draft and not McCarthy.

Although not apparent on its face, a second interpretation of the allegation in the complaint against HIG was argued at the

hearing on HIG's motion for summary judgment, that is, that the payment of the $15,000.00 was a "lump sum" prohibited by Chapter 294 and an extension of that argument appeared for the first time on appeal. As we discussed under Section II of this opinion, such a claim was unfounded and totally without merit. Coll received the entire amount due and owing to him under Chapter 294 and conveyed it to McCarthy who allegedly mismanaged or misused the funds. Absent any statutory violation or rational argument indicating that HIG breached its duty to Coll, we are compelled under the circumstances to find that he knowingly advanced a claim "unwarranted under existing law" and which was unsupported "by good faith argument for an extension, modification or reversal of existing law."[8] Common sense dictates that if Coll

---

[8] It is appropriate to look to the Code of Professional Responsibility for guidance in defining the term "frivolous." *See Kahn v. Cundiff*, 533 N.E.2d 164 (Ind. App. 1989) (court looked to Indiana's rules of professional conduct in defining "frivolous," a basis for costs and attorney's fees in Indiana Code section 34–1–32–1).

Hawaii's Code of Professional Responsibility, Disciplinary Rule 7–102(A)(1981) in relevant part provides:

(A)  In his representation of a client, a lawyer shall not:
   . . . .
   (2)  Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

Further, we note that HRCP Rule 11, as amended 9/1/90, provides a further source which may be helpful in defining the term "frivolous" in future cases. HRCP Rule 11, as amended, provides in pertinent part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion,

believed that the lump sum payment to him was in violation of the Hawaii Motor Vehicle Insurance Law, it was incumbent upon him to return it and request that HIG pay the medical providers directly.

We, therefore, conclude that the trial court was clearly erroneous in not finding Coll's claim against HIG to be frivolous.

### B.

We turn now to the question of which of three alternative statutes urged by HIG applies as to the determination of attorney's fees to be awarded in this case.

First, HIG contends that as the prevailing party, it is entitled to an award of attorney's fees under HRS § 607–14. We disagree. HRS § 607–14 authorizes the assessment of attorney's fees "in all actions in the nature of assumpsit." At common law, assumpsit is a common form of action which allows for the recovery of damages for the non–performance of a contract, expressed or implied. *Schulz v. Honsador*, 67 Haw. 433, 435, 690 P.2d 279, 281 (1984). HIG contends that the instant action is one of assumpsit because Coll was seeking recovery of no–fault insurance benefits under a contract, that is, HIG's policy. We need not discuss the import of Coll not being a party to the contract insofar as this is not a case involving a claim for no–fault benefits under the policy, but a claim for negligent payment of those benefits. Therefore, HRS § 607–14 was not applicable and the trial court's denial of attorney's fees under said statute was not an abuse of its discretion.

---

or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

HIG argues alternatively that two statutes authorize an award of attorney's fees in the event Coll's claim is deemed frivolous. Review of HRS § 431:10C–211(d) and HRS § 607–14.5 indicates that the former is inapplicable while the latter authorizes an award of attorney's fees against Coll.

HRS § 431:10C–211(d) allows an insurer to recover reasonable attorney's fees and costs incurred in having to defend a claim for no–fault benefits which is determined to be fraudulent or frivolous. We reiterate that Coll's claim was not for no–fault benefits, which were fully paid, but alleged a claim in tort for consequential damages. Therefore, this provision is likewise inapplicable.

HRS § 607–14.5, on the other hand, specifically provides that an award of reasonable attorney's fees may be ordered where "all claims . . . made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action." We are mindful of the argument that statutes which allow the assessment of attorneys' fees may have a chilling effect in detering the filing of law suits based on innovative theories or to modify, extend, or reverse existing law. However, we must also heed the obvious legislative intent in enacting such statutes which is to "compensate parties in civil litigation who have been victimized by the frivolous claims of the opposing party in the course of litigation and thereby incurring unnecessary attorneys' fees." Sen. Conf. Comm. Rep. No. 81–80, in 1980 Senate Journal, at 997. We think that not to award HIG its reasonable attorney's fees under the circumstances of this case would be an abuse of discretion.

IV.

Based on the foregoing, the trial court's grant of summary judgment in favor of HIG is affirmed, the denial of HIG's motion for attorney's fees is affirmed in part and reversed in part and this

case is remanded for action on HIG's request for attorney's fees under HRS § 607–14.5.

*Glen J. Dryer* for Plaintiff–Appellant and Cross–Appellee.

*Roy Y. Yempuku* (*Gary S. Miyamoto* with him on the brief) for Defendant and Counterclaim Plaintiff–Appellee and Cross–Appellant.