Electronically Filed
Supreme Court
SCPW-23-0000571
26-OCT-2023
08:41 AM
Dkt. 37 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI‘I

---o0o---

RICKEY T. RIVERA, JR., Petitioner,

vs.

THE HONORABLE LISA W. CATALDO,
Judge of the Circuit Court of the First Circuit,
State of Hawai‘i, Respondent Judge,

and

LEONA KALIMA; DIANE BONER; RAYNETTE NALANI AH CHONG,
special administrator of the estate of JOSEPH CHING, deceased;
CAROLINE BRIGHT; DONNA KUEHU; and JAMES AKIONA, on behalf of
themselves and all others similarly situated,
Respondents/Plaintiffs,

and

STATE OF HAWAI‘I; STATE OF HAWAI‘I DEPARTMENT OF
HAWAIIAN HOME LANDS,
Respondents/Defendants.

SCPW-23-0000571

ORIGINAL PROCEEDING
(CASE NO. 1CC990004771)

OCTOBER 26, 2023

RECKTENWALD, C.J. AND EDDINS, J., CIRCUIT JUDGE VIOLA,
IN PLACE OF McKENNA, J., RECUSED, CIRCUIT JUDGE TO'OTO'O AND
CIRCUIT JUDGE OCHIAI, ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY EDDINS, J.

**I.**

For decades, thousands of Native Hawaiians waited to lease land pledged to them under the federal government's 1920 Hawaiian Homes Commission Act. First the Territory of Hawai'i, then the State of Hawai'i, held homestead land in trust for Native Hawaiian beneficiaries. Both breached their fiduciary duties from the start. See Kalima v. State, 111 Hawai'i 84, 88, 137 P.3d 990, 994 (2006) (Kalima I).

Now Native Hawaiians will receive compensation for the State's failure. In a class action, trust beneficiaries successfully sued the State. The State breached its trustee responsibilities. The State settled.

Many beneficiaries died as the case progressed. Others waited. And waited. Like untold numbers of Native Hawaiians after 1920 who just wanted to live on the promised homelands. Our decision accelerates payout to the beneficiaries.

Because of its extraordinary public importance, we accepted a petition for a writ of mandamus, an appeal challenging final approval of the case's settlement.

We hold that Petitioner Rickey T. Rivera, Jr. has no right to compensation. He was born beyond the statutory period to receive a payout from the settlement.

Rivera also appealed to the Intermediate Court of Appeals (ICA). Our decision ends Rivera's appeal. We direct the ICA to dismiss CAAP-23-0000572.

**II.**

The Hawaiian Homes Commission Act created a land trust to provide homesteads to Native Hawaiians. Kalima v. State, 148 Hawai'i 129, 133, 468 P.3d 143, 147 (2020) (Kalima II). Kalima I and Kalima II chronicle the messy history of the State's trust breaches. And the snail-paced struggles to redress those betrayals. Kalima I, 111 Hawai'i at 88-97, 137 P.3d at 994-1003; Kalima II, 148 Hawai'i at 133-42, 468 P.3d at 147-56. We recap some history.

In 1991, the legislature waived the State's sovereign immunity. It passed a law that allowed beneficiaries of the Hawaiian Homes Commission Act to sue the State. Hawai'i Revised Statutes (HRS) § 674-17 (2016). The law entitled qualified Native Hawaiians to compensation for individual trust breaches that happened between August 21, 1959 and June 30, 1988. HRS § 674-16 (2016).

In 1999, the plaintiffs filed a class action alleging breaches of the State's trust responsibility. In 2009, the

Circuit Court of the First Circuit sided with them. The State was liable. Kalima II, 148 Hawai'i at 136, 468 P.3d 150. Drawn-out litigation, settlement talks, and law-making ensued.

In June 2022, the parties settled. The State agreed to pay the beneficiary class $328 million. The legislature, in turn, appropriated funds for that settlement. S.B. 3041, S.D. 2, H.D. 1, C.D. 1, 31st Leg., Reg. Sess. (2022); see Act 280 (2022).

The settlement agreement has two key terms covering the time frame before eligible class members receive compensation: final approval by the circuit court, and judicial finality – an end to all appellate review.

The circuit court concluded that there were 2,515 eligible class members. 1,351 class members are alive; 1,164 passed away. Class members or their estates will receive $286 million (the remaining funds appropriated by the legislature go to attorney's fees and other expenses).

The settlement excludes class members who are ineligible for payment. HRS § 674-16 has a cut-off date. Per that law, the settlement does not pay anyone who "asserted an individual breach of trust that occurred after June 30, 1988."

This law excludes Rivera. He did not become eligible to apply for a homestead lease until he turned 18 on August 21, 1988.

As final approval neared, the circuit court received objections. The court had to determine – at a Hawai'i Rules of Civil Procedure Rule 23 fairness hearing - whether the class settlement was "fair, reasonable, and adequate." See Pub. Access Trails Hawai'i v. Haleakala Ranch Co., 153 Hawai'i 1, 32, 526 P.3d 526, 557 (2023) (McKenna, J. concurring) (applying the "fair, reasonable, and adequate" standard from Federal Rule of Civil Procedure 23(e) to a Hawai'i class action).

In June 2023, Rivera objected. Later he withdrew his objection. But soon he reappeared, mailing two letters to the circuit court. In the first, Rivera insists that he deserves compensation: the "claim administrator made a mistake." Likewise, the second letter complains that the claim administrator erred. Rivera asks the circuit court to look at his claim.

On July 21, 2023, the court conducted the fairness hearing. The settlement was "fair, reasonable and adequate." All objections lacked merit. The court approved the settlement. And on August 1, it entered final judgment.

On August 17, 2023, the circuit court received and filed another letter from Rivera. Now he wanted to appeal: "I wish to file an appeal before the deadline of August 31, 2023." Rivera wrote: "The appeal is limited to the issue of special master and

claims administrator failing to process my claim in a timely fashion."

Because of the settlement's finality term, Rivera effectively paused payment to 2,515 class members with vetted claims. The circuit court sought input from the parties. The State said that so long as Rivera's appeal is unresolved, the settlement's finality term (no more appeals possible) is unmet. Class counsel countered: Rivera had no right to appeal.

Circuit Court of the First Circuit Judge Lisa Cataldo expressed dismay. "If any case demands that counsel bring to bear the full measure of their experience, expertise and talents to develop and consider strategies for a thoughtful, constructive, creative and legally-compliant resolution short of disposition by the appellate court, it is this one." The court's invite spurred no helpful solution.

On October 9, 2023, Judge Cataldo ordered the clerk to file Rivera's appeal with the ICA (case number CAAP-23-0000572).

Before the appeal was docketed, Rivera sent a letter to the Hawai'i Supreme Court:

> Ref: Kalima Lawsuit Case File
>
> I am a claimant plaintiff in the above case, I respectfully understand the Hawaii Supreme Court has established rules in order to qualify for settlement payment. I believe I do qualify under the rule, but the Special Master refused to process my claims. Can you please have [the Court] review my records for verification please; my defenses are the breach of trust period is from August 21, 1959 through June 30, 1988. My first attempt to apply was June 15, 1988. Enclosed are the records for your review.

Together with that letter were documents, like notices Rivera received from the Hawaiian Claims Office. Rivera didn't pay the petition filing fee, or ask to waive the fee. Then on October 10, the court clerk received a check from him. That day, the clerk docketed Rivera's letter as an original proceeding in this court.

We treated Rivera's letter as a petition for a writ of mandamus. See Erum v. Llego, 147 Hawai'i 368, 391, 465 P.3d 815, 838 (2020) (we construe self-represented filings liberally to provide a route to relief). Because Rivera's petition and appeal raise the same issue, we stayed the ICA proceedings pending resolution of the petition.

### III.

We reject Rivera's petition for a writ of mandamus.

Writs are rare. Writs are an exceptional remedy; they are no substitute for appeal. Gannett Pac. Corp. v. Richardson, 59 Haw. 224, 227, 580 P.2d 49, 53 (1978).

The Hawai'i Constitution and Hawai'i Revised Statutes allow us to issue writs. Art. VI of the Hawai'i Constitution vests the "judicial power of the State" in this court and the lower courts. Judicial power includes the ability to advance justice. State v. Moriwake, 65 Haw. 47, 55, 647 P.2d 705, 712 (1982).

7

HRS § 602-5(3) (2016 & Supp. 2022) confers original jurisdiction over writs. And HRS §602-5(5) allows us to issue writs or orders to aid our jurisdiction.

More broadly, HRS § 602-5(6) empowers the Hawai'i Supreme Court to do justice. This court has the power to "make and award such judgments, decrees, orders and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to it by law or for the promotion of justice in matters pending before it." HRS § 602-5(6).

The Hawai'i Supreme Court also has general supervisory powers over the state's lower courts. "The supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law." HRS § 602-4 (2016).

"Extraordinary writs are appropriate in extraordinary circumstances." Womble Bond Dickinson (US) LLP v. Kim, ___ Hawai'i ___, 2023 WL 6861305, at *9 (2023). "[T]here are rare and exceptional situations where despite the availability of alternative remedies, the special and exigent circumstances of the particular case may move this court to issue its writ."

8

Sapienza v. Hayashi, 57 Haw. 289, 293, 554 P.2d 1131, 1135 (1976).

When issues of "considerable public importance" are at stake, we may exercise our supervisory power. Kaneshiro v. Au, 67 Haw. 442, 446, 690 P.2d 1304, 1308 (1984). Sometimes lower courts require "immediate need of direction from this court on a procedural and substantive matter of public importance." Gannett, 59 Haw. at 227, 580 P.2d 53. The value of speedy resolution may also prompt this court to step in: to "allow the matter to rest until the appeals process has run its course would forestall the expeditious presentation" of important public issues. Sapienza, 57 Haw. at 294, 554 P.2d 1135. A long lull may cause public harm. Id.

Because of this case's extraordinary public importance, we accepted the petition. Now we resolve it.

1,351 people, and the descendants of 1,164 more, await long-overdue compensation. We feel there is a critical and immediate need to provide decisive direction.

Here, the ordinary timeline for appellate review delays justice. Per Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28, an appellant gets 40 days to file their brief, and a respondent receives another 40 days to answer. Then the appellant has 14 days to reply. Extensions may happen. See HRAP 29(a). After that, the ICA takes time to decide.

9

Following the ICA's judgment, a party has 30 days to apply for cert. And this court has 30 days to accept or reject the cert application. HRAP 40.1.

The beneficiaries have waited decades, across two centuries. Many have died before receiving homestead land or compensation for the State's breach of its trust duties. Justice demands ending this case. Paying the beneficiaries. Now.

A prompt appellate resolution serves the public interest. Our resolution is an appropriate use of our authority under HRS §§ 602-4 and 602-5.

**IV.**

Rivera has standing to appeal the circuit court's order approving the settlement. His letters preserved grounds for appeal.

Courts liberally construe a self-represented litigant's filings to promote "equal access to justice and an opportunity to be heard." Makila Land Co., LLC v. Kapu, 152 Hawai'i 112, 121, 522 P.3d 259, 268 (2022). A court assesses a pro se submission to favor a route to relief when a reasonable construction lets the party go on. Erum, 147 Hawai'i at 391, 465 P.3d at 838.

Rivera has preserved the one issue that animates his appeal: eligibility to receive compensation. His letters to the circuit court protested: "I disagree with the notice that I do not qualify for payment." He included several claim-related documents and asked the circuit court to consider his eligibility. Later his August 17 letter announced: "I wish to file an appeal before the deadline of August 31, 2023." We must reasonably construe these filings to pave a route to relief. Rivera gets his day in appellate court. We decide the petition on the merits.

**V.**

The question Rivera raises in his ICA appeal mirrors the one he raises to this court: is he entitled to payment from the settlement pot?

He is not.

The reason is elementary. Rivera was too young to get a homestead lease during the statutory claim period.

In 1991, the legislature passed Act 323. The Act empowered Native Hawaiians to seek compensation for the State's fiduciary breaches. HRS § 674-1 (2016). The State waived its sovereign immunity. HRS § 674-16(a). The people of Hawai'i, through their elected officials, took responsibility. Native Hawaiians were gravely harmed. The legislature awarded "individual

11

beneficiaries under the Hawaiian home lands trust" compensation. HRS § 674-1.

HRS Chapter 674 limited the compensation period from statehood's first day - August 21, 1959 - to June 30, 1988. HRS § 674-16(a). The Hawaiian Homes Commission Act requires homestead applicants to be at least 18 years old. 1985 Haw. Sess. Laws, Act 60, § 2 at 93-94. To receive compensation, a class member must have been eligible for a lease – and thus at least 18 – by June 30, 1988.

Rivera was born too late, August 21, 1970. He turned 18 on August 21, 1988, almost two months after the June 30 statutory deadline.

Many settlement class members waited decades for homestead land that never came. But Rivera was too young to get a lease. So he lacks any claim to compensation. The claims administrator and circuit court correctly concluded that he was ineligible for compensation.

We end Rivera's case. Because the legal issue is the same, our holding moots Rivera's appeal in CAAP-23-0000572.

**VI.**

We deny the petition. Per HRS §§ 602-4 and 602-5, we order the ICA to dismiss CAAP-23-0000572.

There are no appeals left.  This petition ends all appellate review in case number 1CC990004771.  We remand to the circuit court.

| | |
|---|---|
| Rickey T. Rivera, Jr.<br>(on the briefs)<br>Petitioner | /s/ Mark E. Recktenwald |
| | /s/ Todd W. Eddins |
| | /s/ Fa'auuga L. To'oto'o |
| Carl M. Varady, Thomas R.<br>Grande (on the briefs)<br>for respondents Leona Kalima,<br>Diane Boner, Raynette Nalani Ah<br>Chong, special administrator of<br>the estate of Joseph Ching,<br>deceased, Caroline Bright, Donna<br>Kuehu, and James Akiona, on<br>behalf of themselves and all<br>others similarly situated | /s/ Dean E. Ochiai |
| | /s/ Matthew J. Viola |



Donna H. Kalama, Craig Y. Iha,
Jordan A.K. Ching, Linda Lee K.
Farm (on the briefs)
for respondents State of Hawai'i
and State of Hawai'i Department
of Hawaiian Home Lands