*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCPW-23-0000471
18-APR-2024
08:21 AM
Dkt. 95 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

BOARD OF LAND AND NATURAL RESOURCES,
State of Hawai'i, Petitioner,

vs.

THE HONORABLE JEFFREY P. CRABTREE,
Judge of the Circuit Court of the First Circuit,
State of Hawai'i, Respondent Judge,

and

SIERRA CLUB, ALEXANDER & BALDWIN, INC., EAST MAUI IRRIGATION
COMPANY, LLC, and COUNTY OF MAUI, Respondents.

SCPW-23-0000471

ORIGINAL PROCEEDING
(CASE NO. 1CCV-22-0001506)

APRIL 18, 2024

RECKTENWALD, C.J., McKENNA, EDDINS, JJ., CIRCUIT JUDGE DeWEESE
AND CIRCUIT JUDGE KAWASHIMA, ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY EDDINS, J.

**I.**

This case concerns attorney fees.

We hold that a state-initiated original proceeding is not a legal action sheltered by sovereign immunity.  Thus, the state may be on the hook for reasonable attorney fees spent opposing a frivolous petition for extraordinary relief.

Like here.  We conclude the Sierra Club is entitled to attorney fees.

## II.

In 2022, the Board of Land and Natural Resources, State of Hawai'i (BLNR) approved the continuation of revocable permits that allowed Alexander & Baldwin, Inc. and East Maui Irrigation Company, LLC to divert 40.49 million gallons of water per day (mgd) from East Maui streams.  The Sierra Club appealed to the Circuit Court of the First Circuit Environmental Court.  It argued that the BLNR unlawfully denied its request for a contested case hearing.

In June 2023, the environmental court modified the permits and capped at 31.5 mgd the amount of water Alexander & Baldwin and East Maui Irrigation could divert from the streams.  The environmental court invoked Hawai'i Revised Statutes (HRS) § 604A-2(b)'s general equitable powers and also indicated that HRS § 91-14(g) allowed it to modify the permits.

On July 14, 2023, the environmental court sided with the Sierra Club.  The BLNR should've held a contested case hearing. Then, citing Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res.,

2

136 Hawai'i 376, 380-81, 363 P.3d 224, 228-29 (2015), and two other cases, the environmental court explained that "[a]s a general rule, when an agency fails to conduct a necessary contested case hearing, any approval it has issued is void." Rather than void the revocable permits, however, the environmental court "re-ordered" the 31.5 mgd cap. Like before, the environmental court invoked HRS § 604A-2(b) (2016 & Supp. 2018) and HRS § 91-14(g) (2012 & Supp. 2019). Public trust doctrine principles also supported the cap, the court wrote. The environmental court's "Decision on Appeal and Order" explained that the court decided "not to risk chaos or unintended consequences by voiding the revocable permits in their entirety. Doing so would potentially leave a legal vacuum until BLNR can issue new permits, which in turn could threaten reliable availability of necessary water."

On August 8, 2023, Lahaina burned and Hawai'i residents died.

The next day, the BLNR petitioned this court. The Department of the Attorney General (AG), the BLNR's attorney, requested an extraordinary writ. The BLNR sought a writ "enjoining the Respondent Judge from modifying the revocable permit conditions, including the cap amount of water permitted to be diverted." It also sought "an immediate stay of the Respondent Judge's order."

The AG's petition opened: "Central Maui has no water for fire reserve because the Respondent Judge substituted his judgment for that of the agency.  As a result, there was not enough permitted water to battle the wildfires on Maui this morning."

The petition announced: "Now there is not enough fire reserve water in Central Maui."  This shortage resulted, the BLNR alleged, because the environmental court "refused to permit any diversion of water for firefighting under the permits."  The BLNR declared that "having the circuit court act as the gatekeeper to water has resulted in an imminent threat to public health and safety."

Naturally we paid attention.  The Department of the Attorney General initiated an original proceeding during an unthinkable human event.  The petition advanced an idea that legal events impacted the nation's most devastating wildfire.  A fire that leveled Lahaina, a historic, one-of-a-kind place on earth.  Land so special that in 1802 it was established by King Kamehameha as the Hawaiian Kingdom's capital.

This court quickly ordered briefing.  At our request, the Sierra Club, the plaintiff during the years-long case, filed a response.  They met our speedy three-day deadline.

Both the County of Maui and the Sierra Club credibly discredited the BLNR's key factual claim to support its petition

4

– there was no water to adequately fight the Maui fires because of the environmental court. Maui County flatly contradicted the BLNR. The County said it had way more than enough water to fight the fires.

The Sierra Club called the BLNR "shameful." It described the BLNR's petition as disrespectful finger-pointing, a "brazen attempt to capitalize on tragedy to subvert the judicial process." Counsel's briefing exhaustively, yet concisely, connected wide-ranging on-the-record evidence to persuasively confute the BLNR's accusations.

In contrast, the BLNR's briefing mustered nothing, even scantly, to support its instigative claims that "there was not enough permitted water to battle the wildfires on Maui this morning" because the environmental court judge "substituted his judgment for that of the agency."

The BLNR's petition second-guessed the environmental court's rulings. As the Sierra Club aptly noted, the BLNR's quibbles with those calls hardly amounted to writ material: "Well-settled precedent prohibits BLNR from leap-frogging over ongoing appellate proceedings . . . . Writs of mandamus are decidedly 'not meant to . . . serve as legal remedies in lieu of normal appellate procedures,' which is exactly what BLNR is attempting here."

5

Before oral argument, the Sierra Club informed the Department of the Attorney General that the statements in the petition were sanctionable.

The BLNR did nothing.

We held oral argument. Right away, this court asked the BLNR's attorney whether the agency wished to "walk back" passages, or anything it had represented, in its petition. Counsel declined. Again and again. Much later during the virtual oral argument, counsel deep-breathed, "We're not blaming the circuit judge, and we do apologize for the harshness of the language."

The County of Maui repeated that it had enough water and that the environmental court's decisions did not impact Maui's firefighting efforts. The County represented it had millions of gallons of water available, strong-winds hampered helicopter access, and it had used 37,000 gallons of water over approximately five days of firefighting.

We took the matter under advisement.

Not for long. The next morning this court issued a two-page order denying the BLNR's petition.

### III.

The Sierra Club moved this court per HRS § 607-14.5 (2016) for attorney fees.

In suits for monetary damage or injunctive relief, HRS § 607-14.5(a) allows "either party, whether or not the party was a prevailing party" to recover its reasonable attorney fees if "all or a portion of the party's claim or defense was frivolous."

This original proceeding does not involve monetary damages. Thus, it must relate to injunctive relief for the Sierra Club to recover fees under HRS § 607-14.5.

That's not all. After a party identifies the other side's frivolous claims in writing, HRS § 607-14.5(c) gives the putatively transgressing party a chance to foreswear them. If a party takes back its words, it may not have to pay up. There are no attorney fees "[i]f the party withdraws the frivolous claims or defenses within a reasonable length of time." HRS § 607-14.5(c).

The BLNR opposed the Sierra Club's motion for attorney fees. As a state agency, it invoked sovereign immunity. That doctrine bars monetary recovery, the BLNR says, including attorney fees and costs. The BLNR also insists its claims were not frivolous or made in bad faith.

We disagree.

First, we conclude that the BLNR's petition functionally compares to an injunctive relief action. The BLNR's petition

7

requested an "immediate stay" of a court order and asked us to "enjoin" the environmental court.

We see little difference for purposes of HRS § 607-14.5 fees between a writ that seeks injunctive relief and a complaint that seeks injunctive relief. The remedy is the same – injunctive relief. Thus, any distinction between how a party styles a request for prospective relief is immaterial.

Next, we conclude that the BLNR made frivolous claims and declined to withdraw them despite the peril of paying attorney fees.

Some claims have no place in our legal system. They dent the justice system. The legislature designed HRS § 607-14.5 to curb frivolous allegations. To award attorney fees for a frivolous claim, a court must make "a specific finding that all or a portion of the party's claim or defense . . . are frivolous and are not reasonably supported by the facts and the law in the civil action." HRS § 607-14.5(a) and (b).

Since this is an original proceeding, we treat the entire petition as the pleading. The BLNR's factual claims are intertwined with its claims for relief. The allegations directly support the requested relief and are subject to an HRS § 607-14.5 frivolous finding.

The BLNR sought a writ against the environmental court. It believed the court exceeded its jurisdiction. The BLNR knows

that this court rarely fact-finds.  See State v. West, 95 Hawai'i 452, 461, 24 P.3d 648, 657 (2001) (abrogated on other grounds) ("We take this opportunity to reiterate that fact-finding is the fundamental responsibility of the judge of the facts at trial.").  Yet, the BLNR's petition overflows with factual allegations to support its interest.  The BLNR makes varied factual claims to promote a view that the environmental court enfeebled firefighting efforts.

The Sierra Club says the BLNR "made a series of unsupported and unsupportable statements."  The Sierra Club paints the BLNR's petition as misleading and disrespectful.  It makes clear, though, that the "primary" focus of its motion relates to "BLNR's false statements and undisputed facts."

We understand that representations may not always have a sound basis in fact or law.  That's bad.  But that's sometimes litigation.  And those representations that have no reasonable basis in fact or law are typically taken care of.  See Ralston v. Yim, 129 Hawai'i 46, 55, 292 P.3d 1276, 1285 (2013).

But this is different.

The Sierra Club spotlights five representations made by the BLNR.

1. "Central Maui has no water for fire reserve because the Respondent Judge substituted his judgment for that of the agency.  As a result, there was not enough permitted water to battle the wildfires on Maui this morning."

9

2. "Now there is not enough fire reserve water in Central Maui."

3. "Shortly after [the environmental court 'refused to permit any diversion of water for firefighting under the permits,'] terrible wildfires broke out in Maui, leaving the court and agency hamstringed and unable to act quickly within the circuit court's own parameters to adjust water for firefighting."

4. "The [environmental] court disagreed and refused to permit any diversion of water for firefighting under the permits."

5. "Time is of the essence and having the circuit court act as the gatekeeper to water has resulted in an imminent threat to public health and safety."

We conclude these allegations were frivolous. The Sierra Club's answer and motion, and Maui County's representations, clearly establish sound grounds for us to conclude that "a portion of the party's claim . . . was frivolous." HRS § 607-14.5(a).

Contrary to the claims in the BLNR's petition, there was enough permitted water and reserve water to fight the fires. And the environmental court's actions did not "result[] . . . in an imminent threat to public health and safety."

The Sierra Club provided us hard data and pointed to the underlying case's water usage figures. If needed, there was sufficient water in the Central Maui reservoirs to fight Maui's fires. By a lot. Unused water diverted from the East Maui streams went into the Central Maui reservoirs and was available

for firefighting (and dust control).  In its July 2023 quarterly report to the BLNR, Alexander & Baldwin and East Maui Irrigation disclosed that in April, May, and June 2023, there was a monthly average of 5.5 mgd available in the Central Maui reservoirs for fire protection.  Despite the BLNR's claims, the Central Maui reservoirs had sufficient fire water reserves.  The BLNR presented nothing to prop up its allegations.

So there were millions of gallons of water per day to fight the fires.  But how much water *could* Maui County use?  Not millions of gallons per day.  In a 2021 contested case proceeding, the BLNR issued this finding of fact:

> According to the Maui County Fire Department, a helicopter uses approximately 2,400 gallons per hour of water; tankers use 7,000 gallons per hour; type 1 engines use 1,500 gallons per hour; type 5 engines use 800 gallons per hour; and utility vehicles use 300 gallons per hour. . . . Assuming that it is only safe to fight a fire during daylight, a fire requiring one-each of those (helicopters, tankers, and utility vehicles) would use 144,000 gallons of water (12,000 approximate gallons hourly x 12 hours of daytime firefighting) every day.

Now we turn to how much water *would* Maui County use to fight the fires – a useful metric to consider if the environmental court's decisions impaired life-and-property-saving efforts.

The County of Maui helped.  During oral argument, the County represented it used 37,000 gallons of water over approximately five days of fighting the fires.  High winds hampered aerial efforts.  (At oral argument, the BLNR's counsel

fuzzily referred to "others" who used unspecified amounts of water.)

Next, contrary to the BLNR's assertions, the environmental court's order specifically permitted water for firefighting. The allotted water usage for firefighting would be "drawn from the 7.5 mgd drawn by the County." So the BLNR's claims that the environmental court "refused to permit any diversion of water for firefighting under the permits" and "Central Maui has no water for fire reserve" are counterfactual.

The BLNR also claimed that the environmental court's permit modification "hamstringed" the agency, leaving it "unable to act quickly within the circuit court's own parameters to adjust water for firefighting." We are dubious. Not only because, like its other representations, the BLNR produced little or no support to back its words. But because of the court's actions during the morning of August 9, 2023, the day after the fires started and before the BLNR filed its petition. Then, the environmental court emailed all counsel asking if there were "any issues related to the water cap . . . and the ongoing efforts to suppress the wildfires across Maui." Per Alexander & Baldwin and the BLNR's requests, the environmental court suspended the 31.50 mgd cap from August 9 to August 15 – "the court hereby authorizes any additional water use above the cap

related to actual or potential fire fighting, fire suppression, fire hazard, or any other use related to the recent fires."

The BLNR's representations are "manifestly and palpably without merit." Coll v. McCarthy, 72 Haw. 20, 29, 804 P.2d 881, 887 (1991). They are frivolous.

The Sierra Club's motion called the BLNR's statements "harmful" to both the Sierra Club and the court system. It says the BLNR "perpetuated a false narrative that the environmental court, the Sierra Club and others who care about the environment were exacerbating damage caused by the fires."

We realize that making untrue or inaccurate statements standing alone does not establish that a party's statements were frivolous. See Canalez v. Bob's Appliance Serv. Ctr., Inc., 89 Hawai'i 292, 300, 972 P.2d 295, 303 (1999).

Here, there's more.

During oral argument, this court asked the deputy attorney general many times whether the BLNR wanted to "walk back" passages or anything it had represented. Counsel declined.

On August 30, 2023, after this court denied the petition, the Sierra Club informed the BLNR's counsel and senior members of the Department of the Attorney General that it would seek attorney fees unless the AG's filed "an unequivocal[] withdraw[al]" of five statements it had made in its petition.

13

The Sierra Club reminded them: "The Sierra Club explained in its answer to the BLNR's petition that these statements have no evidentiary support; that they are false; that they were made in bad faith, exploiting a tragedy; and that they are frivolous."

The Department of the Attorney General stood by its words.

Rejecting a request to retract and refusing to withdraw spurious attacks on a judge count when it comes to an HRS § 607-14.5 frivolous finding. "In determining whether claims or defenses are frivolous, the court may consider whether the party alleging that the claims or defenses are frivolous had submitted to the party asserting the claims or defenses a request for their withdrawal." HRS § 607-14.5(b).

Though HRS § 607-14.5 does not mention "bad faith," this court has determined that the concept shapes a frivolous finding under that law. We have said that an HRS § 607-14.5(b) "finding of frivolousness is a high bar; it is not enough that a claim be without merit, there must be a showing of bad faith." Tagupa v. VIPDesk, 135 Hawai'i 468, 479, 353 P.3d 1010, 1021 (2015). This court has not defined the contours of HRS § 607-14.5(b)'s "frivolous-plus" finding, but we have assessed bad faith under certain circumstances. For instance, in Tagupa we suggested that "an excessive and unreasonable amount of damages may be an indication of the frivolous and bad faith nature." 135 Hawai'i

14

at 480, 353 P.3d at 1022 (cleaned up).  And Coll reasoned that the plaintiff's knowledge when filing a complaint that the allegations were false, clearly indicated bad faith.  72 Haw. at 30-31, 804 P.2d at 888.  In Canalez this court declined to award attorney fees, holding that although a party made untrue or inaccurate statements, whether the defendant's "negligence caused the accident still remained unresolved."  89 Hawai'i at 300, 972 P.2d at 303.  These cases do not set an insurmountable bad faith bar to HRS § 607-14.5 attorney fees.  Rather, they stress that "[a] meritless claim, without more, is not sufficient to show that the . . . party acted in bad faith."  Pub. Access Trails Hawai'i v. Haleakala Ranch Co., 153 Hawai'i 1, 29, 526 P.3d 526, 554 (2023).

Here, it seems that the BLNR tried to leverage the most horrific event in state history to advance its interests.

The BLNR's attention-grabbing petition for extraordinary relief asked us to step in and enjoin the environmental court. Based on "facts" the BLNR advanced.  Facts wrapped in super-charged word choices.

Turns out, the BLNR offered no evidence to back its aggressive position that the circuit court's orders regarding water permits in East Maui caused a shortage of water available to fight the wildfires.  They presented nothing to show that "there [was] not enough fire reserve water in Central Maui"

because of the "Respondent Judge's uninformed notions of hydrology."

We hold that the statements made in the BLNR's petition were so "manifestly and palpably without merit, so as to indicate bad faith." Coll, 72 Haw. at 29, 804 P.2d at 887 (citation omitted).

The morning after the oral argument, this court issued a terse order denying the petition. The timing and content of that order signaled our displeasure with the original proceeding.

Writs are rare. They remedy extraordinary legal events. The Department of the Attorney General knows that "[e]xtraordinary writs are appropriate in extraordinary circumstances. Exceeding jurisdiction, committing a flagrant and manifest abuse of discretion, or refusing to act on a subject properly before the court under circumstances in which it has a legal duty to act, are court actions and inaction that may constitute extraordinary circumstances to issue a writ." Womble Bond Dickinson (US) LLP v. Kim, 153 Hawai'i 307, 319, 537 P.3d 1154, 1166 (2023) (cleaned up).

The AGs also know that a writ-seeking party has a tough lift. A petitioner must "demonstrate . . . a clear and indisputable right to the relief requested and a lack of other

means to redress adequately the alleged wrong or to obtain the requested action." Id. (cleaned up).

This court read and heard the BLNR's arguments. The petition does not approach the standard for extraordinary relief.

The BLNR's refusal to withdraw the meritless assertions, the flimsiness of its request for extraordinary relief, and its use of the Maui tragedy, support a finding of frivolousness and bad faith. That is, a "portion of the claims . . . made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action." HRS § 607-14.5(b). And those claims were made in bad faith. See Tagupa, 135 Hawai'i at 479, 353 P.3d at 1021.

**IV.**

Because we find HRS § 607-14.5 applies, the Sierra Club may recover its reasonable attorney fees and costs.

We conclude the Sierra Club counsel's requested attorney fees and costs are reasonable. Under an accelerated timeframe, we asked the Sierra Club to aid our understanding of the BLNR's petition. Counsel produced sound writing and presented solid oral argument to this court. In this case, filed against the environmental court judge (who declined to respond per Hawai'i Rules of Appellate Procedure (HRAP) Rule 21(c) (eff. 2010)), counsel helped set the record straight. Along with the County

17

of Maui, the Sierra Club showed how the BLNR made claims "not reasonably supported by the facts and the law."

We conclude that the Sierra Club counsel's request for attorney fees was reasonable and sufficiently documented.

Wait, not so fast, the BLNR hand-waves. As a state agency, it invokes sovereign immunity. Though reasonable attorney fees may be appropriate, sovereign immunity shields the state from having to pay.

Not so.

Sovereign immunity is judicially-made. The doctrine protects a state from suits that seek monetary damages. See Nelson v. Hawaiian Homes Comm'n, 130 Hawai'i 162, 168, 307 P.3d 142, 148 (2013). Most of the time. Unless there is a "clear relinquishment of immunity and the State has consented to be sued," money is not a remedy for a successful suit against the state. Bush v. Watson, 81 Hawai'i 474, 481, 918 P.2d 1130, 1137 (1996) (cleaned up); see also Rivera v. Cataldo, 153 Hawai'i 320, 323, 537 P.3d 1167, 1170 (2023).

Sovereign immunity does not bar injunctive relief actions. In a suit like this "[w]here a party seeks only injunctive relief, the ability to sue the state does not stem from a *waiver* of sovereign immunity, but from the fact that sovereign immunity does not bar suit in the first place." Sierra Club v. Dep't of

Transp. of State of Hawai'i, 120 Hawai'i 181, 229 n.30, 202 P.3d 1226, 1274 n.30 (2009).

Some suits against the state are unconcerned with a monetary remedy.  For instance, declaratory judgment actions are a common way the state winds up as defendant.  "The State's sovereign immunity does not bar actions seeking prospective declaratory or injunctive relief."  Gold Coast Neighborhood Ass'n v. State, 140 Hawai'i 437, 464, 403 P.3d 214, 241 (2017).

The BLNR argues that sovereign immunity forbids damages, and attorney fees are just like damages.  Citing Gold Coast, the BLNR maintains that because "an award of costs and fees to a prevailing party is inherently in the nature of a damage award," sovereign immunity bars recovery.  Id. at 465, 403 P.3d at 242. Since fees are like damages, the BLNR's argument goes, it doesn't need to pay the Sierra Club's lawyer.  Just like the state didn't need to pay Gold Coast Neighborhood Association's lawyer.

But there's a big difference.  Gold Coast Neighborhood Association initiated the action against the state and therefore could not recover.  See id. at 443, 403 P.3d at 220.  This court purposefully left for another day whether the state may invoke sovereign immunity to dodge attorney fees in a case where it initiated the action.  Id. at 466, 403 P.3d at 243.

That day has come.  The state did not withhold consent from being sued.  It sued.  The BLNR initiated an original proceeding against the environmental court.  A separate case.  In this court.  See HRS § 602-5(a)(3) (2016); HRAP Rules 17 (2006) and 45 (2016).  The BLNR served the respondents, First Circuit Court Judge Jeffrey Crabtree, and the Sierra Club.  This is not a proceeding against the state.

We hold that the state waives its sovereign immunity when it initiates an original action.  See People v. Downs, 864 N.E. 2d 320, 323 (Ill. App. Ct. 2007) ("The doctrine of sovereign immunity bars only actions brought *against* the State, not actions brought *by* the state.").  Thus, if the state initiates an original action and makes frivolous claims, then it is subject to reasonable attorney fees.

This court also has the inherent power to issue orders "for the promotion of justice in matters pending before it."  See HRS § 602-5(a)(6).  We read what we read.  To call the Department of the Attorney General's petition intemperate or insolent may understate its tone.  More examples: "whims of the Respondent Judge"; "The amount of water in East Maui streams is subject to the Respondent Judge's uninformed notions of hydrology"; "The Board and other affected parties are left with no judicial recourse . . . while Maui burns. . . .  [T]hose fighting wildfires are left hoping the Respondent Judge checks his

email." Such statements undermine public trust and confidence in the judicial process.

HRS § 602-5(a)(6) empowers the Hawai'i Supreme Court to issue orders to advance justice. <u>Rivera</u>, 153 Hawai'i at 324, 537 P.3d 1171. An HRS § 602-5 path to recovery of reasonable attorney fees is also not off limits under circumstances like these.

**V.**

We grant the Sierra Club's motion.

The Sierra Club is entitled to the attorney fees and costs detailed in counsel's declaration and the attorney fees and costs incurred to litigate its motion.

| | |
|---|---|
| Miranda C. Steed (Julie H. China and Danica L. Swenson on the briefs) for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| | /s/ Todd W. Eddins |
| | /s/ Wendy M. DeWeese |
| David Kimo Frankel for respondent Sierra Club | /s/ James S. Kawashima |

